STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey L. ELVERMAN, Defendant-Appellant.†

Court of Appeals

*No. 2014AP354–CR. Submitted on briefs August 3, 2015.
—Decided November 10, 2015.*

## 2015 WI App 91

(Also reported in 873 N.W.2d 528.)

† Petition for Review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey L. Elverman*, pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. Jeffrey Elverman, *pro se,* appeals the judgment of conviction for theft greater than $10,000, contrary to Wis. Stat. §§ 943.20(1)(a) and

(3)(c) and 939.50(3)(g) (2003–04).[2] He also appeals the order denying his postconviction motion.[3] Elverman presents numerous arguments on appeal: (1) that the complaint was defective because it did not sufficiently give him notice of the charges against him; (2) that the statute of limitations had expired prior to commencement of the criminal proceedings as to all but two checks at issue, or alternatively, that the statute of limitations had expired as to all checks at issue because the filing of the complaint did not commence criminal proceedings; (3) that venue was not proper in Milwaukee County; (4) that the trial court erred in denying his request for a unanimity jury instruction; (5) that the evidence was insufficient to establish that he lacked consent; and (6) that his trial counsel was ineffective. We affirm.

## BACKGROUND

¶ 2. This is a criminal case in which a large sum of money was stolen from D.P., an elderly woman suffering from Alzheimer's dementia, by her then-attorney, Jeffrey L. Elverman. While it is not entirely

_____

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[3] The trial court denied Elverman's postconviction motion on February 3, 2014. After filing a notice of appeal, Elverman's postconviction counsel filed a motion to withdraw due to Elverman's desire to proceed *pro se,* and we granted that motion. We thereafter stayed Elverman's appeal so that he could raise additional postconviction issues before the trial court, and the trial court denied Elverman's supplemental postconviction motion on August 26, 2014. We lifted the stay on September 23, 2014, and we now consider all properly raised postconviction issues that Elverman argued in both his initial and supplemental postconviction motions. Unless otherwise noted, references to Elverman's postconviction motion includes both the initial and supplemental postconviction motions.

clear exactly how or when Elverman's relationship with D.P. began, it is undisputed that D.P. named Elverman as the successor power of attorney in a durable financial power of attorney document she signed on May 11, 2000.[4] At that time, Elverman was a partner at Quarles & Brady LLP's Milwaukee office, and he assumed power of attorney duties under the durable financial power of attorney on January 8, 2001, when the previous power of attorney resigned.

¶ 3. A criminal complaint was filed on December 6, 2010, alleging that Elverman had committed theft exceeding $10,000, in violation of Wis. Stat. §§ 943.20(1)(a), (3)(c) and 939.50(3)(g) (2003–04), between March 25, 2003, and September 23, 2004, by transferring movable property of D.P. without consent and with the intent to permanently deprive D.P. of her property. Per the complaint, an investigation into Elverman's conduct began in or around late 2008 after Supportive Community Services, a non-profit guardianship agency appointed by court order as D.P.'s guardian, reviewed D.P.'s finances and discovered that a large amount of money had been transferred from D.P. to Elverman from December 2001 through September 23, 2004. The complaint alleged that during that time period, checks totaling over $600,000 were written on D.P.'s account and payable to Elverman. However, the charge was based only on conduct occurring between March 25, 2003, and September 23, 2004.

---

[4] Mr. Daniel Langenwalter testified at trial that it was his understanding that Elverman's relationship with D.P. dated back to at least 2000. Langenwalter was the executive director at Supportive Community Services, a nonprofit corporate guardianship agency, that was appointed to serve as D.P.'s guardian in October 2008.

¶ 4. The complaint further alleged that D.P.'s physician had determined that she was incapacitated and that she was unable to manage her day-to-day affairs as of March 24, 2003, due to Alzheimer's dementia, and that her physician's medical records reflected that this information was faxed to Elverman at his office on March 24, 2003.

¶ 5. Elverman voluntarily appeared with counsel at an initial appearance on December 7, 2010. Elverman waived oral reading of the criminal complaint, although he did not waive jurisdictional objections. The court found probable cause and informed Elverman that he would need to be booked that day, and after being booked, he was released on a $10,000 signature bond. The preliminary hearing was thereafter scheduled for December 27, 2010; however, when the parties appeared on that date, Elverman appeared with new counsel because the attorney who appeared with him at the initial appearance had filed a motion to withdraw. The parties requested an adjourned preliminary hearing date, and after confirming that Elverman waived the time limits for a preliminary hearing, the court agreed to adjourn the preliminary hearing to January 11, 2011.

¶ 6. At the January 11, 2011 preliminary hearing, the court began to hear testimony from one of the State's witnesses, but then had to adjourn the hearing to January 25, 2011, due to time constraints. At the adjourned hearing, Elverman's counsel moved to dismiss on the grounds that: (1) there had been testimony that Elverman was employed by D.P. and that D.P. herself had signed the checks at issue; (2) only those checks dated September 10, 2004, and September 23, 2004, were within the statute of limitations; and (3) venue was improper because the September 10,

2004, and September 23, 2004 checks were neither written nor deposited in Milwaukee County. The court denied Elverman's motion to dismiss, found probable cause to believe that a felony had been committed in Milwaukee County, and bound Elverman over for trial. The State thereafter filed an information with the court, and Elverman waived formal reading and entered a plea of not guilty.

¶ 7. The parties appeared before the court on April 14, 2011, on Elverman's motion to overturn the probable cause finding. At that hearing, Elverman's counsel argued that there was not sufficient evidence to find probable cause and that Elverman's alleged conduct could not be charged as a continuing offense. Elverman's counsel further argued that because there was no continuing offense, charges as to all but two checks were barred by the statute of limitations and venue was not proper in Milwaukee County. During the course of his argument, Elverman's counsel specifically referred to WIS. STAT. § 971.36, a procedural statute allowing a prosecutor to charge a series of acts as one count under certain circumstances.[5] After hearing the parties' arguments, the court denied the motion to dismiss on the record and thereafter issued a written decision and order denying the motion on April 27, 2011.

¶ 8. Elverman filed a motion with this court pursuant to WIS. STAT. RULE 809.82(2) on May 11, 2011, seeking to extend the time for filing a petition for leave to appeal the trial court's April 27, 2011 written order.

---

[5] We point this out because one of Elverman's arguments on appeal is that because WIS. STAT. § 971.36 was not specifically cited or quoted in the complaint, he was unaware of the circumstances in which that statute applies and what must be established when that statute is relied upon.

We denied that motion on May 18, 2011, concluding that Elverman had failed to demonstrate good cause for extending the deadline or that there was any likelihood of success on the merits.

¶ 9. Prior to trial, Elverman filed motions *in limine,* a supplemental motion *in limine,* and a renewed motion to dismiss on August 11, 2011. Elverman raised two grounds for dismissal: (1) that the evidence did not support a continuing offense charge and therefore action on all but two checks was barred by the statute of limitations; and (2) venue was improper in Milwaukee County because the only two checks not barred by the statute of limitations were neither signed nor deposited in Milwaukee County. Elverman's brief acknowledged that these issues had previously been raised in a motion challenging the sufficiency of the evidence and that the court had rejected these arguments in denying that earlier motion. After hearing arguments on the motion on December 12, 2011, the trial court stated that the court's earlier rulings on the issue would stand.

¶ 10. The case proceeded to trial and the jury heard testimony from numerous witnesses as to D.P.'s mental health, Elverman's relationship with D.P., and the amounts of money that were regularly transferred from D.P.'s account to Elverman. For example, the jury heard that in February 2001, Elverman hired Ms. Marion Whelpley to assist D.P. in her day-to-day affairs and for general companionship. According to Whelpley's testimony, she initially spent two to three days per week with D.P., although that quickly increased to approximately five days per week, and based on her observations, Elverman took D.P. out for lunch for an hour and a half to two hours nearly every week. Whelpley also testified that she kept track of

185

when Elverman visited D.P. in her planner, that Elverman helped D.P. pay her bills, that she regularly spoke with Elverman regarding D.P.'s health, particularly after taking D.P. to her doctor appointments, and that she copied Elverman on letters that she wrote to D.P.'s physicians regarding her concerns with D.P.'s health and behavior. Multiple physicians also testified as to their observations and diagnosis of D.P.'s Alzheimer's dementia during the relevant time period.

¶ 11. Special Agent Amy Lehman of the Wisconsin Department of Justice Division of Criminal Investigation also testified at trial. Specifically, she testified that the checks at issue varied in amount ranging from approximately $4500 to $9750, and the record shows that Elverman frequently received multiple checks from D.P. each month, sometimes within a matter of days. There was also trial testimony that although D.P.'s signature appeared on the checks issued to Elverman, the body of the checks appeared to have been filled in by an individual other than D.P.

¶ 12. Based on the testimony and evidence presented, a jury found Elverman guilty of theft as charged in the information and that the value of the property obtained exceeded $10,000. After an extensive, multi-day sentencing hearing, the trial court sentenced Elverman to five years' initial confinement and five years' extended supervision, imposed and stayed, and placed Elverman on probation for five years. As conditions of probation, the court ordered condition time of seven months with a maximum of seventy-two hours work release privileges per week, stayed until May 1, 2012, as well as restitution in the amount of $325,000, with credit for amounts already paid as of March 8, 2012. Per the restitution

order, $1500 would be due the first of each month for the remainder of 2012, $2000 would be due on the first of each month in 2013, and $3000 would be due the first of each month for 2014 and beyond until paid in full.

¶ 13. Elverman filed a notice of intent to seek postconviction relief on March 13, 2012. After receiving multiple extensions from this court extending the deadline to file a postconviction motion or notice of appeal, Elverman filed a motion for postconviction relief on November 6, 2013, which the trial court denied in a written order dated February 3, 2014. On February 12, 2014, Elverman's postconviction counsel filed a notice of appeal from the judgment of conviction filed on March 13, 2012, and from the decision and order denying Elverman's postconviction motion entered on February 3, 2014. Elverman's postconviction counsel thereafter filed a motion to withdraw due to Elverman's desire to proceed *pro se,* which we granted after concluding that Elverman was fully aware of the risks of proceeding *pro se* and that he was knowingly, intelligently, and voluntarily surrendering his right to appellate counsel. Because Elverman wished to raise supplemental postconviction issues before the trial court, we stayed this appeal and remanded to the trial court. We lifted that stay on September 23, 2014, after learning of the trial court's August 26, 2014 written order denying Elverman's supplemental motion for postconviction relief.

¶ 14. After fully briefing the issues on appeal, Elverman filed a Petition to Bypass Court of Appeals on February 17, 2015. In a letter filed on February 25, 2015, the State stated that although it opposed Elverman's petition, it was waiving its right to file a formal response and would only file a formal response if

requested by the court. In an order dated May 11, 2015, the Supreme Court of Wisconsin denied Elverman's petition to bypass. We now address the issues raised on appeal, and additional facts will be developed below as necessary.

## ANALYSIS

¶ 15. On appeal, Elverman argues that the trial court erred in entering the judgment of conviction and in denying his postconviction and supplemental postconviction motions because: (1) the complaint was insufficient to give him notice of the charges against him; (2) the statute of limitations had expired prior to commencement of the criminal proceedings as to all but two checks at issue, or alternatively, because the filing of the complaint was not sufficient to commence criminal proceedings, the statute of limitations had run as to all of the alleged checks at issue; (3) venue was not proper in Milwaukee County; (4) the trial court erred in denying his request for a unanimity jury instruction; (5) the evidence was insufficient to establish that he lacked consent; and (6) his trial counsel was ineffective.[6]

*I. The complaint was sufficient to give Elverman notice of the charges against him so that he could plead and prepare a defense.*

¶ 16. Elverman first argues that the information and complaint failed to provide sufficient notice of the specific acts for which he was being charged because

[6] We do not necessarily address Elverman's arguments in the order he raises them in his brief, and as necessary, we address Elverman's arguments in a different context than raised.

neither the information nor the complaint cited or referred to Wis. Stat. § 971.36(3) (2003–04), leaving him unaware that each act was being aggregated and that it was therefore necessary that the evidence show he had acted pursuant to a single intent and design. Stated differently, Elverman argues that because the complaint identifies numerous specific instances where he stole funds between March 25, 2003, and September 23, 2004, each of which could have been charged as a single violation, the complaint does not sufficiently set forth any one occasion where he stole more than $10,000 as required to be found guilty and convicted of the charge. We conclude that the complaint was sufficient to give Elverman notice of the charges against him.[7]

■■

¶ 17. The facts alleged in a complaint must be sufficient " 'in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and that the defendant is probably culpable.' " *State v. Kempainen*, 2015 WI 32, ¶ 16, 361 Wis. 2d 450, 862 N.W.2d 587 (citation omitted). When reviewing the sufficiency of a complaint, the facts alleged "must be sufficient to establish probable cause." *State v. Dekker*, 112 Wis. 2d 304, 310, 332 N.W.2d 816 (Ct. App. 1983). Such review, however, is not done in a "hypertechnical sense, but in a minimally adequate way through a common sense evaluation" of whether a crime has been committed. *Id.*

---

[7] Unless otherwise noted, we refer to the information and complaint collectively as the "complaint" because the complaint is the document in which the details and background facts related to the charge are set forth.

¶ 18. "A defendant's right to be informed of the nature and cause of the accusations is guaranteed by the sixth amendment to the federal constitution and Art. I, [sec.] 7 of the Wisconsin Constitution." *State v. Copening*, 103 Wis. 2d 564, 573, 309 N.W.2d 850 (Ct. App. 1981). There are two considerations in determining whether a complaint meets that standard: "(1) whether the accusation is such that the defendant can determine whether it states an offense to which he is able to plead and prepare a defense, and (2) whether conviction or acquittal is a bar to another prosecution for the same offense."[8] *Id.* Whether a complaint provides "notice to the defendant is a question of constitutional fact that we review *de novo*," and we do not consider extrinsic evidence. *See Kempainen*, 361 Wis. 2d 450, ¶ 16 (emphasis added).

¶ 19. In certain cases, theft may be accomplished by a single act; however, there are also instances in which theft occurs as a result of an ongoing scheme. *See Copening*, 103 Wis. 2d at 572–73. In the latter case, "it may be necessary to allege several individual transactions which, considered together, reflect the [ongoing scheme]." *Id.* at 573. Accordingly, "[i]n any case of theft involving more than one theft, all thefts may be prosecuted as a single crime" where "[t]he property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme." WIS. STAT. § 971.36(3)(a). Furthermore,

---

[8] Elverman does not specifically address the double jeopardy issue, and we therefore will not discuss this consideration. However, to the extent that Elverman's duplicity argument touches on this consideration, we address the duplicity argument separately.

In any case of theft involving more than one theft but prosecuted as a single crime, it is sufficient to allege generally a theft of property to a certain value committed between certain dates, without specifying any particulars. On the trial, evidence may be given of any such theft committed on or between the dates alleged; and it is sufficient to maintain the charge and is not a variance if it is proved that any property was stolen during such period.

§ 971.36(4).

¶ 20. The State has discretion to charge an ongoing scheme as a single offense rather than charging each specific act as its own offense, even where each act itself could be a violation of a criminal statute. *State v. Jacobsen*, 2014 WI App 13, ¶¶ 18–19, 352 Wis. 2d 409, 842 N.W.2d 365 (2013); *see also Copening*, 103 Wis. 2d at 573. This is exactly what the State chose to do in this case, as the complaint alleges that between March 25, 2003, and September 23, 2004: (1) Elverman intentionally transferred movable property of D.P.; (2) the transferred property exceeded a total value of $10,000; (3) the transfer was without D.P.'s consent; and (4) Elverman intended to permanently deprive D.P. of the property. The complaint additionally identified numerous checks throughout the relevant time period by date and amount, as well as the total amounts allegedly stolen during specific periods within the March 25, 2003, and September 23, 2004 timeframe. There is no question that the aggregate of the amounts identified in the complaint sufficiently alleged that Elverman stole property exceeding $10,000 between March 25, 2003, and September 23, 2004. In fact, the complaint specifically alleged the total amount of property sto-

len during that time period was $374,800. Accordingly, the pleadings here were sufficient to notify Elverman of the charges so that he could plead and prepare a defense.

■■

¶ 21. We also conclude that the complaint sufficiently alleges a single intent or design to commit theft. A single intent or design to commit theft may be inferred from the complaint. *See Copening*, 103 Wis. 2d at 573 (acknowledging that theft by fraud may be accomplished by a single act or as part of an ongoing scheme and that "[t]he single criminal design to commit theft [was] inferable from the complaint"). The complaint here is over three pages long and identifies specific checks by date and amount throughout the relevant time period, as well as describes the nature of Elverman's relationship with D.P. Contrary to Elverman's argument, Wis. Stat. § 971.36(3)(a) does not introduce an additional element necessary to prove the crime of theft, and based on the facts alleged in the complaint, the allegation that Elverman acted pursuant to a single intent or design is readily inferred.

■■

¶ 22. Elverman repeatedly points to the fact that neither the information nor the complaint specifically refer or cite to Wis. Stat. § 971.36 and argues that such absence renders the information and complaint insufficient. While citation to a specific statute may be the preferred practice, failure to specifically cite to a statute in the information and complaint is harmless error where there is no prejudice to the defendant. *See State v. Charbarneau*, 82 Wis. 2d 644, 648, 264 N.W.2d 227 (1978) (noting that although the court had "repeatedly commended the practice of referring" to the party-to-a-crime statute in the infor-

192

mation, doing so was not mandatory and failure to specifically recite the statute was harmless error when no detrimental effect on the defendant). Indeed, WIS. STAT. § 971.26 states that "[n]o . . . information [or] complaint . . . shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant."

¶ 23. The record here is replete with clear references to WIS. STAT. § 971.36 well in advance of trial, despite not being specifically cited in the information or complaint. For example, in his first motion to dismiss, filed in the trial court on February 28, 2011, Elverman argued that the facts alleged in the complaint did not constitute a "continuing offense." Although Elverman did not specifically refer to § 971.36 in that motion, the State specifically cited that statute as providing authority to charge Elverman with one count based on continuous conduct in its response to Elverman's motion, and, as previously noted, Elverman's counsel explicitly cited that statute at the hearing on that motion. Elverman again moved to dismiss on August 11, 2011, arguing, *inter alia,* that § 971.36 should not apply. Having repeatedly challenged the applicability of § 971.36 to the facts as alleged in the complaint prior to trial, Elverman cannot reasonably argue that he was unaware of the "single intent and design" language of that statute.

¶ 24. In summary, WIS. STAT. §§ 971.36(3)(a) and (4) allow for aggregation of the value of property alleged stolen where multiple acts of theft are prosecuted as one count. The complaint sufficiently alleged that Elverman stole property from D.P. over a period of time and that the aggregate amount exceeded $10,000, and a single intent or design was readily inferable

193

from the details provided in the complaint. We therefore conclude that the complaint sufficiently advised Elverman of the nature and cause of the charges against him so that he could plead and prepare a defense and that the complaint's failure to specifically cite or refer to § 971.36 was not prejudicial to Elverman.[9]

## II. Criminal proceedings against Elverman were commenced prior to the statute of limitations expiring as to all checks alleged in the complaint.

¶ 25. Elverman was charged with felony theft, contrary to Wis. Stat. §§ 943.20(1)(a), (3)(c) and 939.50(3)(g) (2003–04), which must be prosecuted within six years of the alleged crime being committed.

---

[9] In his brief-in-chief, Elverman combines his argument that the complaint did not allege a single act of theft exceeding $10,000 with his argument that the evidence was insufficient to establish that he had committed a single act of theft that itself exceeded $10,000. It appears that Elverman confuses the concept of a single act standing alone with the single count based on continuous conduct for which he was charged. Because we believe this issue relates more directly to Elverman's argument as to the sufficiency of the complaint, we address this aspect of his sufficiency of the evidence argument in this section. This is particularly so because Elverman argues only that the evidence was insufficient to establish a single violation exceeding $10,000 because there was no evidence presented establishing that any single check itself exceeded $10,000. As we explain, however, it was not necessary for any single check, standing alone, to exceed the $10,000 threshold because this was a continuing act and any combination of checks exceeding $10,000 was sufficient. The record is replete with evidence upon which the jury could conclude that Elverman had committed a theft exceeding $10,000, and any challenge to the sufficiency of the evidence on those grounds fails.

WIS. STAT. § 939.74(1). Elverman raises two statute of limitations arguments. First, Elverman argues that because the alleged theft could not be charged as a continuing offense, only the last two checks—those cashed on September 10, 2004, and September 23, 2004—fell within the six-year limit that was tolled for 120 days beginning on September 8, 2010, and ending on January 8, 2011. Alternatively, Elverman argues that because the information was not filed until January 25, 2011, the action had not been commenced within the meaning of § 939.74(1) prior to the statute of limitations expiring on January 8, 2011, and therefore *none* of the alleged acts occurred within the six-year statute of limitations period.

■■■■■

¶ 26. Whether the statute of limitations expired prior to commencement of a criminal action is a question of statutory interpretation that we review *de novo*. *State v. Slaughter*, 200 Wis. 2d 190, 196, 546 N.W.2d 490 (Ct. App. 1996). A court lacks personal jurisdiction to try a defendant if the prosecution is not commenced prior to the running of the statute of limitations. *State v. Pohlhammer*, 78 Wis. 2d 516, 523, 254 N.W.2d 478 (1977). The statute of limitations begins to run when the crime is complete. *Pendergast v. United States*, 317 U.S. 412, 418 (1943).

> A. *Because theft can be charged as a continuing offense pursuant to WIS. STAT. § 971.36(4), the statute of limitations did not begin to run until the last act was completed on September 23, 2004.*

¶ 27. Elverman's first statute of limitations argument stems from his claim that theft cannot be charged as a continuing offense. Elverman essentially

argues that because his conduct could not be charged as a continuing offense, only the last two checks—those he cashed on September 10, 2004, and September 23, 2004—fell within the tolled statute of limitations period; thus, Elverman argues that he could only have been charged, at most, with theft for those two checks.

¶ 28. "[W]hether a particular criminal offense is continuing in nature is primarily one of statutory interpretation." *John v. State*, 96 Wis. 2d 183, 188, 291 N.W.2d 502 (1980). Where an offense is a continuing offense, "the statute of limitations . . . does not begin to run until the last act is done which viewed by itself is a crime." *Id.* "The continuing offense doctrine is well established, and has been applied to encompass a wide variety of criminal activity including embezzlement, conspiracy, repeated failure to file reports, failure to report for induction, theft by receiving, and the failure to make and keep records of controlled substances, as well as others." *Id.* at 189 (internal citations omitted).

¶ 29. "In contrast to the instantaneous nature of most crimes, a continuing offense is one which consists of a course of conduct enduring over an extended period of time." *Id.* at 188. "Even if the initial unlawful act may itself embody all of the elements of the crime, the criminal limitations period commences from the most recent act." *Id.* A statute should be construed as a continuing offense only where " 'the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that . . . (the legislature) must assuredly have intended that it be treated as a continuing one.' " *Id.* at

196

190 (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970) (omission and parenthesis in *John*)). Thus, in determining whether the offense in question is a continuing one, we look first "to the terms the legislature used in defining the offense in question." *John*, 96 Wis. 2d at 190.

██ ██

¶ 30. WISCONSIN STAT. § 943.20(1)(a) (2003–04) sets forth the elements the State must prove in order to obtain a guilty verdict for theft, and WIS. STAT. § 971.36(3)(a) (2003–04) plainly states that multiple violations of § 943.20(1)(a) (2003–04) may be charged as a single crime. Section 971.36 (2003–04) additionally provides that where multiple thefts are charged as one crime, "it is sufficient to allege generally *a theft of property to a certain value committed between certain dates,* without specifying any particulars." *See* § 971.36(4) (2003–04) (emphasis added). Reading these statutes together, we see no other reasonable interpretation but that multiple acts of theft occurring over a period of time may, in certain circumstances, constitute one continuous offense that is not complete until the last act is completed. This comports with prior statements of this court that a course of conduct can be viewed as a continuing offense. *See Jacobsen*, 352 Wis. 2d 409, ¶ 18 (multiple criminal acts can be charged as one continuous offense).

¶ 31. Elverman discounts the applicability of WIS. STAT. § 971.36 as a procedural pleading statute. We have previously rejected a similar argument, noting that in enacting § 971.36(3)(a), "the legislature has explicitly provided prosecutors with discretion to charge multiple thefts as a single crime." *See Jacobsen*, 352 Wis. 2d 409, ¶ 20. Having granted prosecutors the

197

authority to charge multiple thefts as a single crime, we conclude that Wis. Stat. § 971.36(3)(a) evidences the legislature's intention that theft contrary to Wis. Stat. § 943.20(1)(a) can be charged as a continuing offense. *See Toussie*, 397 U.S. at 115.

¶ 32. Here, the complaint alleged that Elverman committed theft between March 25, 2003, and September 23, 2004, and that the value of the property allegedly stolen exceeded a total value of $10,000. Such allegations mirror the pleading requirements of Wis. Stat. § 971.36(4) (2003–04), and we therefore conclude that the complaint alleged a continuous offense based on the facts of this case. Because Elverman cashed the last check for which he was charged on September 23, 2004, the statute of limitations began to run on that date, and although the complaint was not filed until December 6, 2010, more than six years after the last alleged theft, Elverman and the State entered an agreement on September 8, 2010, tolling the statute of limitations 120 days until January 8, 2011.[10] Accordingly, the action was timely commenced and we therefore reject Elverman's first statute of limitations argument.

---

[10] In the waiver agreement, Elverman reserved the right to argue statute of limitations issues as to those checks for which the six-year statute of limitations period had already run prior to his having entered the agreement on September 8, 2010. We note that although January 6, 2011, was 120 days after September 8, 2010, the statute of limitations extended until January 8, 2011, for the check cashed on September 10, 2004, because two days remained at the time Elverman agreed to toll the statute of limitations.

*B. The filing of the complaint was sufficient to commence criminal proceedings for statute of limitations purposes.*

██

¶ 33. Elverman alternatively argues that *none* of the checks fell within the statute of limitations period because the State did not comply with WIS. STAT. § 939.74(1) prior to the January 8, 2011 statute of limitations deadline. Elverman bases this argument on the language of WIS. STAT. § 939.74(1), which states: "Except as provided . . . prosecution for a felony must be commenced within 6 years . . . after the commission thereof. Within the meaning of this section, a prosecution has commenced when a warrant or summons is issued, an indictment is found, or an information is filed." Elverman does not contest that the *complaint* was filed within the statute of limitations period. Instead, he argues that because no warrant or summons was issued, because there was no indictment, and because the information was not filed until after January 8, 2011, the State failed to commence prosecution of the alleged crime within six years. We disagree.

¶ 34. In *State v. Jennings*, 2003 WI 10, 259 Wis. 2d 523, 657 N.W.2d 393, our supreme court rejected a similar argument. There, the defendant argued that the filing of a complaint was not sufficient to commence a prosecution pursuant to WIS. STAT. § 939.74(1) and that the statute of limitations had therefore expired prior to the commencement of the criminal action. *Jennings*, 259 Wis. 2d 523, ¶¶ 6, 10. Finding that § 939.74(1) was ambiguous in light of WIS. STAT. §§ 967.05(1) and 968.02(2), the court looked to the legislative history of § 939.74(1) and related criminal

statutes addressing the commencement of criminal prosecutions and held that the filing of the complaint was sufficient to commence prosecution. *See Jennings*, 259 Wis. 2d 523, ¶¶ 14–20. In so holding, the court recognized that "criminal statutes . . . enacted after § 939.74 specify that the filing of a complaint may commence a prosecution." *Id.*, ¶ 21. In particular, the court pointed to Wis. Stat. §§ 967.05(1) and 968.02(2), which respectively provide that "a 'prosecution may be commenced by the filing of: (a) A complaint . . .[]' " and that " '[a]fter a complaint has been issued, it shall be filed with a judge . . . . Such filing commences the action.' " *Jennings*, 259 Wis. 2d 523, ¶ 21 (citations omitted; second set of brackets in *Jennings*).

¶ 35. We recognize that the defendant in *Jennings*, unlike Elverman, was incarcerated at the time the complaint was filed and that the defendant's incarceration was an important factor in the supreme court's analysis. However, we believe that our supreme court's reasoning is equally applicable to the facts of this case because Elverman, with counsel, voluntarily appeared at an initial hearing before a court commissioner on December 7, 2010—the day after the complaint was filed. Accordingly, there would have been no reason to issue a warrant for Elverman *after* he had already appeared before the commissioner, as the purpose of a warrant is to notify the defendant that he has been charged and must appear. *See id.*, ¶ 22. Having voluntarily appeared the day after the complaint was filed—which was one month prior to the tolled statute of limitations running on January 8, 2011—Elverman cannot argue that he was unaware of the charges against him [and] that he must appear before the court.

200

¶ 36. In summary, because the alleged theft was properly charged as a continuing offense, the statute of limitations did not begin to run until the date of the last check at issue, and therefore the criminal action was timely commenced as to all acts during the time period alleged in the complaint. Additionally, based on *Jennings*, we reject Elverman's argument that the filing of the complaint was not sufficient to commence prosecution of this action prior to the running of the statute of limitations, as so holding would lead to an absurd result in light of the undisputed fact that Elverman voluntarily appeared before the court not once, but twice, prior to January 8, 2011. Accordingly, the trial court properly concluded that the action was timely commenced by the filing of the complaint.[11]

*III. Venue was proper in Milwaukee County.*

¶ 37. Elverman argues that venue was improper in Milwaukee County. As with many of his arguments, this argument is dependent upon his continuing offense argument. Specifically, Elverman argues that because he could not be charged with a continuing offense, venue was improper in Milwaukee County because neither the September 8, 2004 check nor the September 22, 2004 check—the only two checks that

---

[11] In addition to his voluntary appearance on December 7, 2010, Elverman appeared for a preliminary hearing on December 27, 2010. Although Elverman appeared on that date, his attorney filed a motion seeking to withdraw, and the preliminary hearing was therefore adjourned to January 11, 2011. The preliminary hearing commenced on that date and was continued on January 25, 2011, and the information was filed at the conclusion thereof.

Elverman argues were within the statute of limitations—was written or negotiated in Milwaukee County.

¶ 38. WISCONSIN STAT. § 971.19(2) provides that "[w]here 2 or more acts are requisite to the commission of any offense, the trial may be in any county in which any of such acts occurred." Venue is therefore appropriate in any county in which at least one of the alleged acts occurred where the charge is based on a continuous offense. There is no dispute that at least one of the acts alleged to have occurred between March 25, 2003, and September 23, 2004, occurred in Milwaukee County. Having concluded that theft can be and was properly charged as a continuous offense, venue was therefore proper in Milwaukee County.[12]

*IV. The trial court did not err in denying Elverman's request for a unanimity jury instruction.*

¶ 39. We next address Elverman's argument that the trial court committed reversible error by refusing his pretrial request for a unanimity instruction. Specifically, Elverman argues that his right to a unanimous verdict was not protected because the jury, despite being presented with evidence of multiple checks, was not instructed that it was required to unanimously agree as to which checks Elverman committed theft and that it could therefore only consider those unanimously agreed upon checks in reaching its

─────────────

[12] We note that even if only the September 8 and September 22, 2004 checks were at issue, venue in Milwaukee County was proper, as there was trial testimony regarding the involvement of M&I Bank's Brown Deer processing center, which is located in Milwaukee County, in the negotiation of checks cashed at any of M&I Bank's branch locations.

verdict. In other words, Elverman argues that a specific check could not be found to support the crime charged unless all jurors unanimously agreed that the required elements of theft had been met *as to that specific check.* If the jurors did not unanimously agree that a theft had occurred as to a specific check, that check, Elverman argues, should have been removed from consideration as to whether Elverman committed the one count of theft as charged.

¶ 40. Whether to give a requested jury instruction is within the trial court's broad discretion. *State v. Anderson,* 2014 WI 93, ¶ 16, 357 Wis. 2d 337, 851 N.W.2d 760. "We will not overturn a [trial] court's decision to give or not give a requested jury instruction absent an erroneous exercise of discretion." *Id.* Where the trial court does give a jury instruction, we independently review whether the jury instruction accurately reflects the applicable law in a given case, and we will not reverse the trial court's decision unless we conclude that the instruction did not accurately reflect the applicable law. *See id.* If the "jury instructions do not accurately state the controlling law, we will examine the erroneous instructions under the standard for harmless error, which presents a question of law for our independent review." *State v. Beamon,* 2013 WI 47, ¶ 19, 347 Wis. 2d 559, 830 N.W.2d 681, *cert. denied,* 134 S. Ct. 449 (2013). If a jury instruction was harmless error, we will look to whether the evidence was sufficient based upon the correct legal standard, and we will not overturn the conviction " 'unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt' based on the

statutory requirements of the offense." *Id.*, ¶ 20 (citing *State v. Fonte*, 2005 WI 77, ¶ 10, 281 Wis. 2d 654, 698 N.W.2d 594).

¶ 41. In determining whether the trial court erred in failing to give a unanimity jury instruction despite Elverman's request, we consider the principle of duplicity.[13] "A complaint is duplicitous when it joins two or more separate offenses in a single count." *Jacobsen*, 352 Wis. 2d 409, ¶ 17. Duplicitous charges are defective because a jury could find the defendant guilty even if the State failed to prove each element of the offense beyond a reasonable doubt. *Id.* Where an offense is composed of continuous acts, however, charging a defendant with a single count does not necessarily render the charge duplicitous. *Id.*, ¶ 18. "In other words, the State has discretion to charge a defendant with one continuing offense based on multiple criminal acts when 'the separately chargeable offenses are committed by the same person . . . and relate[] to one continued transaction[.]' " *Id.* (citation omitted; second set of brackets in *Jacobsen*).

---

[13] Elverman alludes to the issue of duplicity in his challenge to the trial court's denial of his request for a unanimity jury instruction. While Elverman does not discuss duplicity specifically in his brief before this court, he did argue before the postconviction court that charging the multiple alleged thefts as one count violated his protections against duplicity and his right to a unanimous verdict. While we generally do not address issues not adequately briefed on appeal, *see State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992), we discuss duplicity because it was raised in Elverman's postconviction motion and because it is intertwined with the issue of unanimity.

¶ 42. Although charging "separately chargeable offenses as a single crime" is within the State's discretion, that discretion is nevertheless "limited by 'the purposes of the prohibition against duplicity[.]' " *Id.*, ¶ 22 (citing *State v. Lomagro*, 113 Wis. 2d 582, 588, 335 N.W.2d 583 (1983) (brackets in *Jacobsen*). In *Lomagro*, our supreme court stated:

> The purposes of the prohibition against duplicity are: (1) to assure that the defendant is sufficiently notified of the charge; (2) to protect the defendant against double jeopardy; (3) to avoid prejudice and confusion arising from evidentiary rulings during trial; (4) to assure that the defendant is appropriately sentenced for the crime charged; and (5) to guarantee jury unanimity.

*Id.* at 586–87. In his brief, Elverman states that "[i]t is the fifth purpose, jury unanimity, which is of issue in [this] case."[14]

¶ 43. While Elverman correctly asserts that he could have been charged with multiple thefts, we have already concluded that it was within the State's discretion to charge Elverman with one continuing offense that began on March 25, 2003, and concluded on September 23, 2004. We therefore consider whether

[14] We note that Elverman did raise arguments as to the sufficiency of the complaint in his brief. However, having already concluded that Elverman was sufficiently apprised of the charge against him, we do not discuss that issue further. Additionally, because Elverman does not argue that the second, third, or fourth *Lomagro* factors are at issue, we discuss only the issue of whether Elverman's right to jury unanimity was violated. *State v. Lomagro*, 113 Wis. 2d 582, 588, 335 N.W.2d 583 (1983).

Elverman's right to a unanimous verdict and protection against duplicity were implicated by the trial court's denial of Elverman's request for a unanimity jury instruction, and we conclude that they were not.

¶ 44. Prior to instructing the jury, the trial court conferred with counsel to discuss the appropriate jury instructions. During the course of those discussions, Elverman's counsel requested that the trial court include Wis JI—Criminal 517, which addresses jury agreement when evidence of more than one act is introduced to prove one charge. That instruction states:

> The defendant is charged with one count of ____.
> However, evidence has been introduced of more than one act, any one of which may constitute ____.
>
> Before you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that the act constituted the crime charged.

Wis JI—Criminal 517 (footnote omitted). Elverman's counsel argued that Wis JI—Criminal 517 was appropriate because he did not believe that simple theft had ever been charged as a continuing offense in Wisconsin and that failing to give this instruction could impact Elverman's right to jury unanimity. The trial court rejected Elverman's request, noting that failure to give the instruction was not reversible error and concluding that it was not appropriate because Elverman was charged with one count of ongoing conduct.[15]

---

[15] In denying the request for Wis JI—Criminal 517, the trial court also indicated that Elverman would not be allowed to "piggyback a special verdict argument on that." It is our understanding that the special verdict referred to was the special verdict form Elverman requested prior to trial that

¶ 45. At the close of evidence, the trial court properly provided the jury with numerous jury instructions, including WIS JI—CRIMINAL 1441.[16] The court also instructed the jury that "[i]n determining the value of the property stolen, [the jury] may consider all thefts that [it was] satisfied beyond a reasonable doubt were from the same owner and committed by the defendant pursuant to a single intent and design." The trial court further instructed the jury that if it found "that the offense charged was committed by the defendant, it [was] not necessary for the State to prove that the offense was committed on a specific date" and that "[i]f the evidence showed beyond a reasonable doubt that the offense was committed during the time period alleged in the information, that [was] sufficient."

¶ 46. The issue presented here is somewhat similar to that addressed in *Lomagro*, where our supreme court considered whether jurors were required to "unanimously agree as to which act or acts the defendant committed in order to find the defendant guilty"

---

would have required the jurors to identify each specific check that the jurors unanimously concluded was an individual act of theft upon which it based its ultimate conclusion. The special verdict form would have required the jurors to identify the date, amount, and venue of each check upon which all jurors agreed was an act of theft.

[16] WISCONSIN JI—CRIMINAL 1441 identifies the elements the State must prove to establish theft contrary to WIS. STAT. § 943.20(1)(a): (1) that the defendant intentionally took and carried away movable property of another; (2) that the owner of the property did not consent; (3) that the defendant knew that the owner did not consent; and (4) that the defendant intended to permanently deprive the owner of possession of the property. The instruction also defines the meaning of "intentionally" and "movable property" for the purposes of that instruction.

where the prosecutor had issued "only one charge but introduce[d] evidence of multiple acts which separately constitute[d] the criminal offense charged." *Id.*, 113 Wis. 2d at 590. There, the defendant was charged with one count of first-degree sexual assault, party to a crime, and the jury heard testimony that the defendant forced the victim to engage in multiple sexual acts. *Id.* at 585.

¶ 47. As did the court in *Lomagro*, we conclude that the jury was not required to unanimously agree as to which specific checks Elverman negotiated in order to convict him on the one count of theft charged. *See id.* at 592. In reaching this conclusion, we look first to "whether the jury [was] presented with evidence of multiple crimes or evidence of alternate means of committing the *actus reus* element of one crime." *See id.* at 592 (emphasis in original). "If more than one crime is presented to the jury, unanimity is required as to each." *Id.* However, "[i]f there is only one crime, jury unanimity on the particular alternative means of committing the crime is required only if the acts are conceptually distinct. Unanimity is not required if the acts are conceptually similar." *Id.*

¶ 48. In *Lomagro*, the court concluded that the defendant had been charged with one crime, first-degree sexual assault, and that "[t]he evidence of the acts of non-consensual sexual intercourse constitute[d] alternative means of committing that crime." *Id.* Likewise in this case, Elverman was charged with one crime—theft—and the evidence presented to the jury established multiple means by which Elverman allegedly committed that crime. In other words, each transaction presented to the jury—evidence of each check that D.P. signed payable to Elverman that Elverman

thereafter negotiated—was evidence of *how* Elverman committed the single act of theft charged. Moreover, the multiple acts—each taking and cashing of a check —were conceptually similar, *see id.*, as each act involved Elverman receiving a check signed by D.P. that Elverman thereafter cashed.

¶ 49. Here, the trial court instructed the jury as to the elements necessary to prove theft and explained that in order to find Elverman guilty, all members of the jury were required to agree that Elverman had committed the crime alleged. While multiple checks were introduced as evidence of the ongoing theft, the jury was not required to unanimously agree that all elements necessary to prove theft had been established as to each individual check. Rather, the jury was required to unanimously agree that Elverman had, during the period beginning on March 25, 2003, and ending on September 23, 2004, committed all elements of theft as part of one continuous crime.

¶ 50. We recognize that Elverman's concern as to unanimity arises from the fact that no single check, in and of itself, exceeded $10,000 and that aggregation was necessary to establish that amount. However, as we have repeatedly discussed, Elverman was charged with one count of theft based on a continuous offense, and it was therefore sufficient that the jury unanimously conclude that Elverman had committed the crime as charged. The jury concluded that Elverman had committed the crime of theft and that the theft had exceeded a total value of $10,000. Accordingly, the trial court did not err in not giving the jury a unanimity instruction, and there was no violation of the protection against duplicity.

209

*V. The evidence was sufficient for the jury to find that D.P. did not consent and that Elverman knew D.P. did not or could not consent.*

¶ 51. Elverman also argues that the evidence was insufficient to establish both that D.P. did not consent to the checks she issued to Elverman and that Elverman knew that D.P. did not consent. Elverman appears to base his arguments on his prior appointment as D.P.'s power of attorney, as he argues that: (1) regardless of her mental incapacity, D.P. granted consent because she had previously appointed him power of attorney; and (2) because he had power of attorney, and because of D.P.'s past words and conduct, he was not capable of knowing that D.P. did not consent.[17] We reject Elverman's arguments and find that there was sufficient evidence to establish both that D.P. did not consent and that Elverman knew that D.P. did not consent.

¶ 52. We review an argument challenging the sufficiency of the evidence in the light most favorable to the jury's verdict. *See State v. Booker*, 2006 WI 79, ¶ 22, 292 Wis. 2d 43, 717 N.W.2d 676. Reasonable inferences drawn from the evidence can support a

---

[17] Elverman argues that "[t]he uncontroverted evidence at trial established that [D.P.] for several years prior to her alleged incompetency in March, 2003, made payments to Mr. Elverman in the same manner and similar amounts to those alleged to have constituted theft post-March of 2003." (Emphasis omitted.) Even assuming Elverman correctly argues that he could have relied on D.P.'s prior words and conduct even after she became mentally incapacitated, which we do not decide, the only checks entered into evidence at trial were those issued on or after March 25, 2003, when Elverman had received notice of D.P.'s incompetence due to Alzheimer's Dementia.

finding of fact and, if more than one reasonable inference can be drawn from the evidence, we must adopt the evidence supporting the verdict. *See State v. Poellinger*, 153 Wis. 2d 493, 506–07, 451 N.W.2d 752 (1990).

¶ 53. "The standard for determining whether sufficient evidence supports a finding of guilt . . . is . . . well established." *State v. Watkins*, 2002 WI 101, ¶ 67, 255 Wis. 2d 265, 647 N.W.2d 244. We cannot reverse a criminal conviction unless the evidence, viewed most favorably to the State and the conviction, " 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.' " *Booker*, 292 Wis. 2d 43, ¶ 22 (citing *Poellinger*, 153 Wis. 2d at 501). If there is any possibility that the jury "could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," we may not overturn the verdict. *See Poellinger*, 153 Wis. 2d at 507–08.

██

¶ 54. It is undisputed that D.P. herself signed the checks at issue. However, the State argued that as of March 24, 2003, D.P. no longer had the mental capacity to grant consent to the transfer of those funds to Elverman. D.P.'s physician, Dr. Brian Hirano, M.D., testified at trial that he signed a "Certificate of Incapacitation" on March 24, 2003, stating that:

> Incapacitation is defined as the inability to receive and evaluate information effectively or to communicate decisions to such an extent that the individual lacks the capacity to manage his or her health care decisions.

> I have personally examined [D.P.] I hereby certify that
> this person is incapacitated and unable to make health
> care decisions *or manage day to day affairs of life*
> because of: Alzheimers Dementia[.][18]

(Emphasis added.) Dr. Hirano also testified that the first page of the "Certificate of Incapacitation" was a fax cover sheet from Quarles & Brady, where Elverman was a partner at the time.

¶ 55. In addition to Dr. Hirano's testimony, the jury also heard testimony from Dr. Eric Kaplan as to D.P.'s mental capacity. Dr. Kaplan testified that he was the medical director of inpatient and geriatric psychiatry at Columbia St. Mary's Hospital; that he had been a geriatric psychiatrist for approximately seventeen years; that he "deal[t] with the elderly and their psychiatric problems"; that D.P. was one of his patients and that he had examined her; that D.P. had been referred to him for treatment of her dementia (Alzheimer's Disease) and that he had treated her in

---

[18] "Alzheimers Dementia" is handwritten in the blank space of the "Certification of Incapacitation." We note that this document appears to be a form for St. Camillus Campus, which is an assisted living facility in Milwaukee. Trial testimony suggests that Dr. Hirano may have signed this document as part of an application for D.P. to become a resident of the St. Camillus Campus; however, Elverman makes no argument that that invalidates the "Certification of Incapacitation" in any way. Elverman likewise makes no argument that he never received the signed "Certification of Incapacitation" from Dr. Hirano or that he was unaware that Dr. Hirano had signed the "Certification of Incapacitation."

We also note that the language in the "Certification of Incapacitation" does not refer to financial affairs explicitly; however, it does refer to [D.P.]'s inability to "manage day to day affairs of life," which logically includes financial matters. Moreover, Dr. Hirano testified at trial that he understood the phrase "day to day affairs of life" to include financial matters.

2002, 2003, and 2004; and that based on her level of dementia at that time, D.P. likely would have had a "fair amount of difficulty" handling her financial affairs, such as paying her bills.

¶ 56. As previously discussed, Whelpley, D.P.'s assistant, also testified as to her observations of D.P.'s mental capacity and well-being throughout the relevant time period. Specifically, Whelpley testified that she believed that D.P. had had "bouts of dementia" throughout 2003, that she had taken D.P. to numerous doctor appointments, that she had written letters to Dr. Hirano summarizing her concerns about D.P.'s mental condition and that she copied Elverman on at least one of those letters, and that she regularly called or spoke with Elverman to provide him with updates after D.P.'s doctor appointments. Whelpley also testified as to specific instances in which D.P.'s mental capacity appeared impaired. For example, Whelpley testified that D.P. confused the seasons, that D.P. became progressively more aggressive and recalled an incident at a grocery store where D.P. wanted to push her cart into another person and then got angry with Whelpley for stopping her from doing so, that D.P. did not recognize her own handwriting, that D.P. believed bunnies were outside her door, and that D.P. believed people were spying on her.

¶ 57. After the close of evidence, the trial court instructed the jury as to the elements required to establish theft contrary to WIS. STAT. §§ 943.20(1)(a) and (3)(c) (2003–04), which includes the requirement that the property's owner did not consent to the transfer of that property and that the defendant knew the owner did not consent to the transfer. The trial court properly instructed the jury that "without consent" means that "there was no consent in fact, or that

consent was given because [D.P.] did not understand the nature of the thing to which she consents by reason of defective mental condition, whether permanent or temporary." The trial court also instructed the jury that it could not "look into [the defendant's] mind to find knowledge . . . . Knowledge . . . must be found, if at all, from the defendant's acts, words, and statements, if any, and from all of the facts and circumstances in this case bearing upon knowledge . . . ."

¶ 58. Based on the evidence presented, there was ample testimony upon which a reasonable jury could conclude that the transfers had been without D.P.'s consent due to her inability to understand, as a result of a defective mental condition, that she was transferring funds to Elverman. Elverman's argument that there was nevertheless consent because he was D.P.'s power of attorney does not cure the consent issue, as there was also sufficient evidence presented to allow the jury to conclude that Elverman was not actually acting as D.P.'s power of attorney at the time of those transactions. For example, the jury heard testimony that D.P.—not Elverman—signed the checks at issue, and it was therefore reasonable for the jury to conclude that although D.P. purported to act on her own behalf, she was incapable of doing so or consenting due to her defective mental condition.

¶ 59. Elverman also argues that there was insufficient evidence establishing that he did not know that D.P. did not consent to the transfer of her funds. According to Elverman, he was incapable of knowing that D.P. did not consent to the transfer of the funds at issue because D.P. had previously named him power of attorney, thereby granting him authority to act on her behalf as to financial matters. In other words, Elver-

man argues that because he had power of attorney for D.P.'s financial matters, it was impossible for him to determine that D.P. was incapable of consenting to an act that *she* undertook.

¶ 60. As explained, the jury heard significant testimony that Whelpley regularly conferred with Elverman in regard to D.P.'s physical and mental health, particularly after she attended doctor appointments with D.P., as well as that it was Elverman himself who sent the "Certificate of Incapacitation" to D.P.'s doctor. Based on such testimony, the jury could reasonably conclude that Elverman was aware of D.P.'s mental capacity and that he therefore *did* know that D.P. was unable to consent to the checks that she signed. That D.P. had previously appointed Elverman power of attorney has no bearing on Elverman's ability to conclude that D.P. could not consent to the actions that he was aware she had undertaken on her own behalf.

¶ 61. Simply put, it was not, as Elverman contends, "factually impossible for [him] to have known he did not have such consent." The jury heard substantial testimony that: (1) Elverman had had a personal and professional relationship with D.P. for a number of years; (2) that Whelpley regularly communicated with Elverman in regard to D.P.'s health and mental well-being; and (3) that Elverman had submitted a "Certificate of Incapacitation" to Dr. Hirano, which Dr. Hirano signed and returned to Elverman on March 24, 2003. Based on this testimony, there was sufficient evidence upon which a jury could reasonably conclude that D.P., by virtue of her incapacity, did not consent, and that Elverman was aware that he did not have consent to negotiate the checks that D.P. issued to him. Accord-

ingly, we may not reverse Elverman's conviction. *See Booker*, 292 Wis. 2d 43, ¶ 22; *see also Poellinger*, 153 Wis. 2d at 507–08.

*VI. Elverman's counsel was not ineffective.*

¶ 62. Elverman's final argument is that trial counsel was ineffective, thereby violating his Sixth Amendment right to counsel. To succeed on this claim, Elverman must show that: (1) trial counsel's performance was deficient; and (2) the deficient performance was prejudicial to Elverman. *See State v. Mayo*, 2007 WI 78, ¶ 33, 301 Wis. 2d 642, 734 N.W.2d 115; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, Elverman "must show facts from which a court could conclude that counsel's representation was below the objective standards of reasonableness." *See State v. Wesley*, 2009 WI App 118, ¶ 23, 321 Wis. 2d 151, 772 N.W.2d 232. To show prejudice, Elverman "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694. If Elverman fails to make a sufficient showing on one *Strickland* prong, we need not address the other issue. *See id.* at 697.

¶ 63. The issues of performance and prejudice present mixed questions of law and fact. *See State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). Findings of fact will not be disturbed unless they are clearly erroneous, *see id.*, but the question of whether counsel's performance was deficient or prejudicial are

216

legal issues we review independently. *See id.* at 236–37. The trial court's findings of fact will be upheld unless clearly erroneous. *Jacobsen*, 352 Wis. 2d 409, ¶ 14.

¶ 64. Elverman correctly recognizes that a successful claim of ineffective counsel requires that he establish both that his trial counsel's performance was deficient and that counsel's deficient performance was prejudicial to Elverman. Elverman, however, does little more than recite that legal standard and then generally conclude in his brief on appeal that "[i]n so far as trial counsel failed to properly raise, preserve and/or develop the arguments herein, then counsel was ineffective" and that there was "[n]o apparent strategic reason . . . for counsel's failure to properly raise, preserve and/or develop the arguments [presented in Elverman's appeal]."[19]

¶ 65. We decline to develop Elverman's argument for him and will not consider this claim further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that the court "may decline to review issues inadequately briefed" and that "[a]rguments unsupported by references to legal authority will not be considered"). We note, however, that we have previously stated that "[a]n attorney does not perform deficiently by failing to make a losing argument." *Jacobsen*, 352 Wis. 2d 409, ¶ 49. Accordingly, to the extent that trial counsel may have failed to raise any of the arguments Elverman raised in his postcon-

---

[19] Elverman made the same limited, undeveloped arguments in his postconviction and supplemental postconviction motions.

viction motions or on appeal, trial counsel was not ineffective, as we have rejected those arguments as explained herein.[20]

*By the Court.*—Judgment and orders affirmed.

---

[20] We note that the trial court likewise rejected Elverman's ineffective assistance of counsel argument, concluding in its written orders denying Elverman's postconviction and supplemental postconviction motions that there had been no error in the court's rulings on the continuing offense issue, the statute of limitations issue, the unanimity issue, that the prosecution had been timely commenced, and that the complaint sufficiently advised Elverman of the charges against him. We agree.