STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark R. JOHNSON, Defendant-Appellant.

Court of Appeals

*No. 2004AP2059–CR. Submitted on briefs June 22, 2005.*
*—Decided August 24, 2005.*

2005 WI App 201

(Also reported in 704 N.W.2d 625.)

382

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J. Mark R. Johnson seeks to reduce his restitution obligation to the insurer of the local business he was convicted of burglarizing. The challenged amount represents the victim's lost profits on a prospective sale of products and services. While Johnson concedes that lost profits on a prospective sale may be imposed as restitution under Wis. Stat. § 973.20(5)(a) (2003–04),[1] he complains that the evidence failed to sufficiently demonstrate that a causal nexus existed between his criminal activity and the victim's claimed lost profits and that the victim's lost profits amounted to $34,800. We conclude the evidence establishes to the requisite degree of certainty that the victim's sale of software and consulting services to an identified customer would have occurred but for Johnson's criminal conduct. We further conclude that the victim and its insurer presented sufficient credible comparable evidence, business history and business experience to permit the trial court's finding that the victim was entitled to $34,800 in lost profits. We affirm.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## FACTS

¶ 2. On January 4, 2001, the State filed a complaint against Johnson, charging him with two crimes: burglary of a building and theft of property. According to the complaint, on the night of October 11, 2000, Johnson allegedly broke into the offices of Puestow & Associates, Inc. in Pewaukee and stole computers and related equipment and accessories. In July 2001, Johnson pled no contest to the burglary charge and the charge of theft was dismissed and read in for sentencing purposes.[2] At the December 2001 sentencing hearing, the trial court imposed fourteen months' initial confinement and six years' extended supervision. The court did not set the restitution amount at the hearing. Instead, the court ordered that restitution was "to be determined by the Department of Corrections" within ninety days of Johnson's release to extended supervision.

¶ 3. At the conclusion of the restitution hearing held on August 11, 2003, the trial court ordered Johnson to pay restitution in the amount of $4500 to John Puestow, the president of Puestow & Associates, and $83,314.35 to CNA Insurance Companies, Puestow & Associates' insurer, to reimburse it for payments it had made to Puestow & Associates following the burglary. The $83,314.35 restitution obligation included $34,800 CNA had paid to Puestow & Associates' for lost profits resulting from the crime. Puestow & Associates' claim for lost profits was based on its prospective sale of computer software and consulting services to Apio, a

---

[2] A charge from a separate case involving misdemeanor possession of drug paraphernalia was also dismissed as part of the plea agreement.

California-based organization. This is the only portion of the restitution award that Johnson challenges on appeal.

¶ 4. The claim for lost profits rested primarily on the documentation Puestow & Associates provided CNA when it filed its claim for reimbursement for its losses stemming from the burglary and theft and on Peter Puestow's testimony at the restitution hearing. In the letter documenting Puestow & Associates' lost profits, Peter Puestow wrote that one of the software systems at issue, the Grower/Supplier Settlement system (GSS system), was a newly enhanced version which the company hoped would be more attractive to purchase. The development of the enhanced system had been completed shortly before the burglary and "[s]everal interested prospects were to be demoed the new system." The Lot Management System (LMS) is the other software system at issue.

¶ 5. Peter Puestow further stated:

> One of the customers that we felt the software products would have been sold to was Apio. How the systems could have helped [sic] Apio is described in the attached document . . . . It also shows that the critical demo was to be conducted on October 16th. The information to be demoed was loaded into the demo system along with the customized power point presentation. All of those materials plus the software systems were stolen on October 11th. So we had to back out of the demo and additional presales activities because we could not guarantee when or if we could deliver the new . . . system.

Puestow also quoted a "Typical Software Sales Price" for the two computer software systems Puestow & Associates expected to sell to Apio. Peter Puestow reported a typical sale price for the "GSS Base Module"

as $40,000 and for the LMS as $75,000. He quoted an additional $15,000 for each system for customizations that would have been done. He therefore reported total revenue from the sale of the systems as being $145,000. He next estimated a sale of consulting services to Apio at $145,000, matching the sale price of the computer software. The prospective sale would therefore generate $290,000 in total revenue. He then estimated Puestow & Associates' profits on the prospective $290,000 sale to Apio to be $34,800, based on a percentage rate of twelve percent.

¶ 6. Attached to the letter was a ten-page document Puestow & Associates had prepared for Apio personnel to describe how its software package would meet Apio's business needs. The first page of this document reflected a five-stage review process of Puestow & Associates' products:

1. Initial Material Review (these materials) prior to the Conference Call

2. 9/26 Conference Call—10 am California time

 -Review of materials sent with this document

 -Further review of software functionality: high level and detail

 -Additional discussion of Apio's Process and Requirements

 -General Review of On Site Demo activities and Materials to be covered

3. Additional Follow-up Conference Calls and EMAILs

 -Further Question and Answer Sessions

4. 10/16 Apio visit, software demonstration, and implementation task review

389

5. Refine Proposals and Costs

 -Answer any remaining questions.

 -Revise and finalize software proposal

 -Refine Implementation Task and Cost estimate

¶ 7. At the restitution hearing, Peter Puestow testified about the relationship Puestow & Associates had with Apio at the time of the burglary and theft and about how the company had computed the amount of restitution for lost profits. Peter Puestow stated that Apio was "going to be purchasing the system if we could demo. Since the equipment was stolen, software was stolen, demo[s] were stolen, we were unable to demo so they did not. They backed out of the deal." Peter Puestow acknowledged that the parties had not entered into a contract, but stated in an exchange with Johnson's attorney:

> [Johnson's attorney]: So you're saying GSS and LMS, Apio were going to buy?
>
> [Peter Puestow]: Yes.
>
> [Johnson's attorney]: They already agreed to pay this amount of money for the system?
>
> [Peter Puestow]: If we were able to do the demo and move forward with the next step of the process, yes.
>
> [Johnson's attorney]: I don't understand that answer. If you could do the demo?
>
> [Peter Puestow]: They had agreed.

¶ 8. Peter Puestow testified that he personally put the numbers together for the lost profits calculation and that the estimates were "based on profits that [the

390

company] ha[d] generated from the sales of similar material in the past." He stated that he had sold the GSS system base model six times and the $40,000 "represents the typical sales price to a company like Apio for the GSS system." He testified that he had sold the LMS to about eighty customers. He related that, while there had not been any customization done before the burglary, his numbers were based on an estimate for customization that Puestow & Associates had provided Apio. Regarding the lost profits from the sale of consulting services, Peter Puestow explained: "Our normal method of identifying revenues [is] for every dollar sold we get at least a dollar of consulting services . . . . We can usually generate a dollar of consulting services revenue not profit." Finally, as for the percentage rate he applied, Peter Puestow testified:

> We have been selling software systems since '95 and we normally have a good feel what the profit revenue or minimum profit revenue can be from a software sale and usually it's 15 percent which is what was used or 12 percent that was used with this discussion.
>
> We try to get 15 but we lowered it to 12 for this claim purposes and when we sell the software we get consulting services and we know roughly what the consulting service will be so we estimate from the loss consulting and can calculate the profitability loss from that also.

## DISCUSSION

¶ 9. While Johnson concedes that lost profits are generally a compensable loss for purposes of WIS. STAT. § 973.20(5)(a), he argues that the trial court's award of lost profits as restitution in this case was improper. He first asserts that there is insufficient evidence of a causal nexus between his criminal acts and Puestow &

Associates' alleged lost profits from the prospective sale to Apio. He next contends that there is insufficient evidence to support the trial court's determination that Puestow was entitled to lost profits in the amount of $34,800.

¶ 10. *Standard of Review.* Resolution of the first issue requires us to interpret and apply Wis. Stat. § 973.20. The interpretation of a statute and application to a given set of facts presents a question of law, which we review de novo. *State v. Loutsch,* 2003 WI App 16, ¶ 10, 259 Wis. 2d 901, 656 N.W.2d 781. However, trial courts have discretion in deciding on the amount of restitution and in determining whether the defendant's criminal activity was a substantial factor in causing any expenses for which restitution is claimed. *State v. Johnson,* 2002 WI App 166, ¶ 7, 256 Wis. 2d 871, 649 N.W.2d 284. When we review a trial court's exercise of discretion, we examine the record to determine whether the trial court logically interpreted the facts, applied the proper legal standard and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach. *State v. Longmire,* 2004 WI App 90, ¶ 16, 272 Wis. 2d 759, 681 N.W.2d 534.

¶ 11. *Puestow & Associates' lost profits as restitution under* Wis. Stat. *§ 973.20.* Wisconsin Stat. § 973.20(5) provides, in pertinent part:

> **(5)** In any case, the restitution order may require that the defendant do one or more of the following:
>
> (a) Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.

Restitution awarded under § 973.20(5)(a) is limited in two ways relevant to our present analysis.

¶ 12. First, restitution is limited to "special damages . . . which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." WIS. STAT. § 973.20(5)(a). The term "special damages" as used in the criminal restitution context means any readily ascertainable pecuniary expenditure paid out because of the crime. *Longmire*, 272 Wis. 2d 759, ¶ 14. Section 973.20(5)(a) contemplates that restitution ordered in a criminal case will generally render actual civil litigation unnecessary. *Longmire*, 272 Wis. 2d 759, ¶ 32. Thus, the ultimate question in deciding whether an item of restitution is "special damages" within the meaning of the statute is whether the item is a readily ascertainable pecuniary expenditure attributable to the defendant's criminal conduct that could be recovered in any type of civil action, such as conversion or breach of contract. *See id.*, ¶¶ 15, 26; *Loutsch*, 259 Wis. 2d 901, ¶ 12.

¶ 13. Second, before a trial court may order restitution "there must be a showing that the defendant's criminal activity was a substantial factor in causing" pecuniary injury to the victim in a "but for" sense. *Longmire*, 272 Wis. 2d 759, ¶ 13; *State v. Rash*, 2003 WI App 32, ¶ 7, 260 Wis. 2d 369, 659 N.W.2d 189. "The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Rash*, 260 Wis. 2d 369, ¶ 7 (citation omitted). This means that the defendant's actions "must be the 'pre-

cipitating cause of the injury' and the harm must have resulted from 'the natural consequence[s] of the actions.' " *State v. Canady*, 2000 WI App 87, ¶ 9, 234 Wis. 2d 261, 610 N.W.2d 147 (citation omitted). Put another way, a causal link for restitution purposes is established when "the defendant's criminal act set into motion events that resulted in the damage or injury." *Longmire*, 272 Wis. 2d 759, ¶ 13. A defendant "cannot escape responsibility for restitution simply because his or her conduct did not directly cause the damage." *State v. Madlock*, 230 Wis. 2d 324, 336, 602 N.W.2d 104 (Ct. App. 1999).

¶ 14. In considering these limitations on "special damages" we bear in mind that the purpose of restitution is to return victims of a crime to the position they were in before the defendant injured them. *State v. Holmgren*, 229 Wis. 2d 358, 366, 599 N.W.2d 876 (Ct. App. 1999). We therefore construe the restitution statute broadly and liberally to allow victims to recover their losses resulting from the criminal conduct. *Id*. Moreover, a restitution hearing is not the equivalent of a civil trial and does not require strict adherence to the rules of evidence and burden of proof. *Id*. at 367.

¶ 15. Because both parties agree that lost profits are recoverable as "special damages" under WIS. STAT. § 973.20(5)(a), we will comment on the matter only briefly. We will then move into a discussion of whether there was a sufficient showing in this case of a causal nexus between Johnson's criminal activity and Puestow & Associates' claim of lost profits.

¶ 16. *Lost profits as an item of "special damages."* The parties recognize that Johnson's criminal conduct in this case could give rise to a civil action based on the

394

torts of conversion and interference with prospective contractual relationships. Conversion damages are intended to compensate a wronged party for the loss sustained because his or her property was wrongfully taken and it appears that the victim may recover lost profits from the prospective sale of the property wrongfully taken. *See Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188, 557 N.W.2d 67 (1996); RESTATEMENT (SECOND) OF TORTS § 927 cmt. m (1977). Further, a claim of tortious interference with a prospective contractual relationship could also lead to recovery for "loss of profits to be made out of the expected contracts." RESTATEMENT (SECOND) OF TORTS § 774A cmt. b (1977).

¶ 17. We observe that it is not the nature of the potential civil cause of action that distinguishes between amounts awardable as restitution and those that are not. *Longmire*, 272 Wis. 2d 759, ¶ 26. As explained, WIS. STAT. § 973.20(5) permits restitution for "all special damages" that could be recovered in any type of "civil action." *See Longmire*, 272 Wis. 2d 759, ¶ 26 (quoting § 973.20(5)(a)). As a general rule in tort actions, there may be recovery for loss of profits if the plaintiff can show with reasonable certainty the anticipation of profit. *Krueger v. Steffen*, 30 Wis. 2d 445, 450, 141 N.W.2d 200 (1966); *The Law of Damages in Wisconsin*, § 26.14 (Russell M. Ware ed., 3d ed. 2000); *see* WIS JI—CIVIL 3725. Thus, lost profits, if shown with reasonable certainty, are an appropriate item of restitution under § 973.20(5)(a) in criminal cases.[3]

---

[3] Courts in other jurisdictions have reached a similar conclusion regarding lost profits as an item of restitution. *See, e.g., State v. May*, 689 A.2d 1075, 1077 (Vt. 1996) (citing several

¶ 18. *Causal nexus between Johnson's burglary and Puestow & Associates' lost profits.* Having explained that lost profits may be recovered under Wis. Stat. § 973.20(5)(a), we turn to the facts of this case and examine whether Johnson's criminal activity was a substantial factor in causing Puestow & Associates' lost profits from the prospective sale to Apio. Johnson argues that Puestow & Associates' claimed lost profits are based entirely on conjecture and speculation and therefore the evidence is insufficient to show that " 'but for' [his] acts Apio would have agreed to purchase [Puestow & Associates'] software and consulting services."

¶ 19. Johnson points out that at the time of the burglary, Puestow & Associates did not have a contract with Apio for the sale of the software systems and consulting services; rather, Puestow & Associates was in the midst of presale activities with Apio. According to Johnson, because Puestow & Associates and Apio were not under contract, the causal link between Johnson's criminal activity and the lost profits is "tenuous," leaving this court to "only speculate whether the crime . . . prevented the sale or whether some other unrelated factor would have caused Apio not to go forward even if the demonstration had occurred."

▆▆▆▆▆

¶ 20. It is not necessary for Puestow & Associates to have an established contract with Apio in order for it to demonstrate the necessary causal link between Johnson's criminal activity and its claimed lost profits. "Where negotiations are under way and appear likely to

cases in which different state courts have required a victim claiming restitution for lost profits to show with some level of certainty the fact of lost profits).

succeed, interference with them has been considered to be a tort" of interference with a prospective contractual relation. *Leonard Duckworth, Inc. v. Michael L. Field & Co.*, 516 F.2d 952, 955 (5th Cir. 1975) (citation omitted); *see The Law of Damages in Wisconsin, supra* at §§ 24.2–24.4. We recognize that, by its very nature, a claim for restitution for lost profits due to a defendant's interference with a prospective contractual relationship will involve at least a minimal amount of speculation or uncertainty. Thus, when the claim for restitution for loss of profits is based on a prospective contractual relationship, the victim must prove with *reasonable certainty* that the prospective contractual relationship would have accrued absent the defendant's wrongful conduct. *Cf. Krueger*, 30 Wis. 2d at 450; *The Law of Damages in Wisconsin, supra* at § 26.14; Wis JI—Civil 3725. As the parties both note, there must be "something more than a mere hope or the innate optimism of the salesman." *Glenn v. Point Park College*, 272 A.2d 895, 898–99 (Pa. 1971). However, in determining whether the proof of lost profits meets the requirement of reasonable certainty, we may give due weight to the fact that it was the defendant's own wrongful conduct that created the speculation or uncertainty in the first instance. *See The Law of Damages, supra* at § 26.9; Restatement (Second) of Torts § 774A cmt. c.

¶ 21. The evidence in this case establishes with reasonable certainty that Puestow & Associates' sale of software and consulting services to Apio would have occurred absent Johnson's burglary and theft. Puestow & Associates had a "critical demo" scheduled for October 16, 2000, five days after Johnson's burglary. The aborted demonstration was the fourth out of a five-step contemplated process for obtaining a contract for the

sale of software systems and services. When asked if Apio had already agreed to pay for the stolen software systems prior to the burglary and theft, Peter Puestow testified, "If we were able to do the demo and move forward with the next step of the process, yes . . . . They had agreed." We see nothing in the record that demonstrates or even suggests that Puestow & Associates felt it was unable to successfully perform the demonstration or any necessary customization or to otherwise complete the five-stage process. Further, it was Johnson's criminal conduct that set in motion the events that derailed Puestow & Associates' anticipated sale of software systems and consulting services to Apio. Peter Puestow's testimony and letter to CNA show that because the software systems were stolen, the company had to back out of the demo and any additional presale activities with Apio because it could not guarantee when or if it could deliver the new systems.

¶ 22. We are not persuaded by Johnson's attempts to favorably compare his case to others in which courts have refused to order restitution for lost profits because the claims were based on speculation or conjecture. In three of the cases, the business claiming lost profits did not identify specific potential customers it had lost as a result of the defendant's wrongful activity. *See Jauquet Lumber Co. v. Kolbe & Kolbe Millwork Co.*, 164 Wis. 2d 689, 705–06, 476 N.W.2d 305 (Ct. App. 1991) (reversing a trial court's award of lost profits based on the plaintiff's decrease in market share because the plaintiff failed to provide a valid market share analysis and/or evidence of specific contracts it had lost); *State v. May*, 689 A.2d 1075, 1077–78 (Vt. 1996) (noting that a manager of the business victimized conceded that he had no idea how many potential customers the business

had lost as a result of the theft and no idea of the value of the projects that might have been lost); *State v. Barrett*, 864 P.2d 1078, 1080–81 (Ariz. Ct. App. 1993) (evidence was insufficient to support restitution award compensating used car dealer who claimed that temporary loss of vehicle prevented him from selling vehicle at higher price because of lowered blue book value at time of vehicle's recovery; without evidence of potential buyers, dealer's conclusory statement as to amount of lost profit could not support award). In the fourth case, *Merco Distributing Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 459–61, 267 N.W.2d 652 (1978), the plaintiff's entire negligence claim was built upon a chain of factual suppositions.

¶ 23. Here, in contrast to those cases, we are not dealing with a string of suppositions or an unknown potential customer. Johnson's criminal activity precluded Puestow & Associates from conducting the critical product demonstration, the fourth stage of a contemplated five-stage negotiations process, for specific and identified customer, Apio. Puestow & Associates was prepared to carry out the demonstration and complete the process at the time of the crime. The contract between Puestow & Associates and Apio only became hypothetical after Johnson's criminal acts.

¶ 24. In sum, the evidence supports the trial court's conclusion that Johnson's criminal activity was a substantial factor in causing pecuniary injury to Puestow & Associates. The evidence reveals with reasonable certainty that Puestow & Associates' sale of software and services to Apio would have occurred but for Johnson's criminal activity.

¶ 25. ***Amount of restitution awarded for lost profits.*** Johnson argues that the record fails to support Puestow & Associates' claim for $34,800 in lost profits.

Specifically, Johnson faults Puestow & Associates for not factoring into its lost profits calculation the related costs or losses associated with producing the product and providing the services.

¶ 26. WISCONSIN STAT. § 973.20(14)(a) places the burden on the victim to show "by the preponderance of the evidence the amount of loss sustained." With respect to "lost profits" as damages in a tort action, we have stated:

> Damages for lost profits need not be proven with absolute certainty, but the claimant must produce sufficient evidence . . . on which to base a reasonable inference as to a damage amount. To establish lost profits, the claimant must produce evidence of the business's revenue as well as its expenses. Assertions as to the amount of lost profits have no evidentiary value unless supported by figures showing profits and losses.

*Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 740, 442 N.W.2d 504 (Ct. App. 1989) (citations omitted). The issue of lost profits damages, however, should be addressed on a case-by-case basis and they are recoverable where a claimant can present credible comparable evidence or business history and business experience sufficient to allow a fact finder to reasonably ascertain the amount of future lost profits. *T & HW Enters. v. Kenosha Assocs.*, 206 Wis. 2d 591, 605 n.6, 557 N.W.2d 480 (Ct. App. 1996). Here, Puestow & Associates presented sufficient credible comparable evidence, business history and business experience to permit the trial court's finding of $34,800 in lost profits.

¶ 27. The sum of $34,800 was based on Puestow & Associates' estimated profit of twelve percent on a prospective $290,000 sale of software systems and consulting services to Apio. In his letter to CNA, Peter

Puestow reported that a typical software sale price for the base GSS system is $40,000. He then testified that this sale price is typical for "a company like Apio," based on the sale of six older GSS systems. Peter Puestow also reported to CNA a sale price of $75,000 for the LMS, calculated at $1000 for each of Apio's anticipated seventy-five users. At the restitution hearing, Peter Puestow explained: "[T]hat's a selling price that we get for that [LMS] product and the 75 users was the typical size for Apio that they were going to be purchasing." Peter Puestow commented that he had sold about eighty LMS in the past.

¶ 28. In his letter to CNA, Peter Puestow also estimated customizations costs of $15,000 each for the GSS systems and LMS; he later testified that these figures were "quotes" given to Apio because no customization had yet been done. Peter Puestow reported to CNA an estimated $145,000 for consulting services to Apio, which matched the sale price of the computer software. At the restitution hearing, Peter Puestow reasoned, "Our normal method of identifying revenues [is] for every dollar sold we get at least a dollar of consulting services . . . . We can usually generate a dollar of consulting services not profit." Finally, in Peter Puestow's letter to CNA, he estimated the company's "profit" on the prospective $290,000 sale to Apio at $34,800 based on a rate of twelve percent. Peter Puestow commented that he put the numbers together himself from first-hand knowledge of previous sales.

¶ 29. When read together, Peter Puestow's testimony and his letter to CNA clearly show that the challenged restitution amount was sufficiently supported by credible comparable evidence, business experience and business history. As Peter Puestow recognized, "These estimates are based on profits that

[Puestow & Associates] ha[s] generated from the sales of similar material in the past." The trial court therefore properly ordered Johnson to reimburse CNA for Puestow & Associates' claimed lost profits in the amount of $34,800.

*By the Court.*—Order affirmed.