COURT OF APPEALS
DECISION
DATED AND FILED

May 17, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1772-CR**

Cir. Ct. No. **2017CF181**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KEVIN C. WAHLGREN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: MICHAEL P. MAXWELL and PAUL BUGENHAGEN, JR., Judges.[1] *Affirmed.*

Before Neubauer, Grogan and Lazar, JJ.

---

[1] The Honorable Michael P. Maxwell entered the judgment of conviction. The Honorable Paul Bugenhagen, Jr., entered the order denying the defendant's postconviction motion.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kevin C. Wahlgren appeals from a judgment of conviction, entered following guilty pleas, for three counts of theft by contractor. He also appeals an order denying postconviction relief. Wahlgren argues the case should be dismissed for lack of subject matter jurisdiction because the charging documents failed to allege the specific criminal intent needed for criminal theft by contractor. For this same reason, Wahlgren argues he should be permitted to withdraw his guilty pleas because his pleas were not knowing, intelligent, or voluntary. Alternatively, Wahlgren asserts the restitution award should be reduced and we should remand for resentencing based on the reduced restitution award. We reject Wahlgren's arguments and affirm.

## BACKGROUND

¶2 An amended information charged Wahlgren with nine counts of theft by contractor, contrary to WIS. STAT. §§ 779.02(5) and 943.20(1)(b) (2021-22).[2] According to the amended complaint, Wahlgren is the president of Wahlgren-Schwenn Inc., a business located in Menomonee Falls, Wisconsin. Lake Country Bible Church contracted with Wahlgren-Schwenn to construct a new church. A church elder stated that he primarily dealt with Wahlgren when

---

[2] Wahlgren was charged in a six-count complaint with criminal theft by contractor. The complaint was amended to add a seventh count, which was reflected in the information. The State later amended the information to break counts one and three into separate counts, in order to address possible concerns about duplicity. The amended information included nine counts.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

working on the project. The agreement stated Wahlgren-Schwenn would be the prime contractor. According to the contract, while the church was being constructed, Wahlgren-Schwenn would request draws from a title company to pay subcontractors for work performed. Upon receiving the check from the title company, Wahlgren-Schwenn was required to pay each subcontractor within fifteen days. However, on several occasions, Wahlgren did not pay the subcontractors. He also requested additional funds to be made available for subsequent draws without paying the subcontractors.

¶3 In April 2015, Lake Country Bible Church learned that Wahlgren was not paying a subcontractor. The subcontractor received a $39,600 check for payment, but Wahlgren asked the subcontractor not to cash it. The subcontractor asked on four subsequent occasions if the check could be cashed. Wahlgren denied all requests, stating he did not have sufficient funds. The church then contacted the title company and determined the title company would pay subcontractors directly going forward. After the change, Wahlgren-Schwenn did not pay any outstanding bills, although the church paid some subcontractors through civil negotiations.

¶4 The amended complaint also alleged that Wahlgren entered into contracts for three other projects separate from the project for Lake Country Bible Church. Similar to his conduct with Lake Country Bible Church, the subcontractors would complete their work, Wahlgren would request payment for the subcontractors' work, Wahlgren would receive a check for the subcontractors' work, and then Wahlgren would not pay the subcontractors as required. The amended complaint explained that some of the subcontractors contacted law enforcement to report the nonpayments. All counts in the amended information

3

contained similar allegations. For example, count six in the amended information stated:

> The above-named defendant between April 14, 2015 and June 1, 2015, [in] Waukesha County, Wisconsin, did as one under an agreement for the improvement of land, received money from the owners Lake Country Bible Church and without consent of the owners and contrary to his authority; intentionally used any of the money for any purpose other than the payment of claims due or to become due from the defendant for labor and materials used in the improvements before all claims were paid in full contrary to sec. 943.20(1)(b) Wis. Stats. and, contrary to sec. 779.02(5) and 943.20(3)(c), 939.50(3)(g) Wis. Stats., a Class G Felony, and upon conviction may be fined not more than Twenty Five Thousand Dollars ($25,000), or imprisoned not more than ten (10) years, or both.

The remaining counts were identically phrased, but with different victims, time frames, and felony classes named.

¶5 Pursuant to a plea agreement, Wahlgren pled guilty to counts six, eight, and nine of the amended information. The remainder of the counts were dismissed but read in at sentencing.[3] Wahlgren signed a plea questionnaire/waiver of rights form. Wahlgren alleged that he understood the crimes to which he was pleading and that his attorney explained the elements to him.

¶6 The elements of criminal theft by contractor, as provided in WIS JI—CRIMINAL 1443A (May 2009),[4] were attached to the plea questionnaire that he

---

[3] An additional count of criminal theft by contractor "that was removed from the amended information for the purposes of trial" was also read in, pursuant to a read-in list.

[4] All references to WIS JI—CRIMINAL 1443A are to the May 2009 version unless otherwise indicated. This is the version that was used during Wahlgren's plea hearing. The pattern instruction was revised in February 2022 to update a footnote. WIS JI—CRIMINAL 1443A at 4 (Feb. 2022).

signed. During the plea hearing, the court had the following exchange with Wahlgren:

> THE COURT: [] Count six of that information states that between August -- I'm sorry, April 14th, 2015, and June 1st, 2015, in Waukesha County, you did, as one under an agreement for the improvement of land, receive money from the owners of Lake Country Bible Church, and without consent of owners, and contrary to your authority, intentionally used any of the money for any purpose other than payment of claims due or to become due from the defendant for labor and materials used in the improvements before all claims were paid in full. This is contrary to Wisconsin law, a class-G felony, which upon conviction you may be fined not more than $25,000 or imprisoned not more than ten years or both.
>
> So what I just read to you is the charge for count six. It includes the elements of the crime as well as the maximum possible penalties. Do you understand the elements of this crime?
>
> THE DEFENDANT: Yes, Your Honor.

¶7 The court and Wahlgren had a similar exchange with respect to counts eight and nine. Wahlgren informed the court that he reviewed a copy of WIS JI—CRIMINAL 1443A with his attorney. Specifically, he reviewed the elements section of that jury instruction and understood what the elements were. He reviewed the entire plea questionnaire/waiver of rights form, as well as its attachments, before he signed it.

¶8 The court then asked Wahlgren:

> Is it true that between April 14, 2015, and June 1st, 2015, in Waukesha County, Wisconsin, that you did, as one under an agreement for improvement of land, receive money from the owners of Lake Country Bible Church, and without consent of the owners and contrary to your authority, you intentionally used any of the money for any purpose other than the payment of claims due or to become due from the defendant for labor and materials used in the improvement before all claims were paid in full.

Wahlgren replied, "Yes. I believe so, yes." A similar exchange took place with respect to the allegations in counts eight and nine. Wahlgren also admitted to the factual allegations in the charging documents. The court accepted Wahlgren's guilty pleas and found him guilty.

¶9 Before sentencing, the court held a contested restitution hearing where it ultimately awarded $470,767.92 in restitution. Relevant to this appeal is the amount awarded for the victims' legal fees, which totaled $144,051.17.

¶10 At the restitution hearing, L.A. testified on behalf of Lake Country Bible Church. For legal fees, the church sought restitution in the amount of $32,631, which was the legal fees "that we had incurred in contacting our attorney regarding the fact that work was not getting done." L.A. explained that liens had been filed against the church's building and three or four foreclosure judgments were pending. L.A. admitted that he did not have the law firm's itemized invoices but testified that all of the requested legal fees were "related to this criminal case." He explained the church initially hired the law firm to review the original contract it had with Wahlgren and the church paid those fees. The requested legal fees were the fees the church incurred since the church re-engaged its law firm to deal with the problems. L.A. admitted the church also initially hired the law firm to get the village's approval for the project and agreed that, because the itemized bills were not in the courtroom, L.A. could not say for sure whether that fee was included in the $32,631 amount. He stated the approval amount would have been nominal.

¶11 The chief financial officer of Lemberg Electric Company, Inc. (Lemberg) testified in support of Lemberg's request for restitution. Lemberg sought $131,844 in restitution, which included $21,974 in legal fees. In support,

Lemberg attached a civil order and judgment from the Milwaukee County Circuit Court, stating Lemberg was entitled to recover $131,844 from Wahlgren-Schwenn. Lemberg did not separately provide any invoices.

¶12 The chief financial officer of Emjay Realty, LLC (Emjay) testified on behalf of Emjay's request for restitution. Emjay sought $33,974 in legal fees. When asked if he had a specific invoice for the fees, the chief financial officer explained that the total amount of legal fees "represent[ed] a series of invoices that extend[ed] over a year which I can't provide." However, he testified that the legal fees were incurred exclusively to address liens that were filed as a result of Wahlgren's failure to pay subcontractors.

¶13 The chief financial officer for Noble Investment Group (Noble) testified in support of Noble's request for restitution. When Noble learned that subcontractors were not getting paid, it began working with attorneys "to try to deal with the liens and get resolution." Noble sought $55,472.17 in legal fees. In an earlier affidavit, Noble included copies of almost all of the invoices from the law firms, but redacted specific descriptions of the work.

¶14 During the hearing, Wahlgren's attorney raised a standing objection to the requests for legal fees because the requests were not adequately supported by documentation.

¶15 In terms of restitution for legal fees, the court ruled that Lake Country Bible Church was entitled to $32,631:

> There is the information that's provided on the summary page for those bills as well as [a] line item in the spreadsheets as far as the Court reviewed those to show those.

> There's also the testimony indicating that the only thing they retained them for at this point was settlement of the issues surrounding Mr. Wahlgren's firm, so I think that's acceptable.

¶16 With respect to Lemberg, the court determined the civil judgment was sufficient and awarded $21,974 in legal fees. As for Emjay, the court found that the legal fees were appropriate. The testimony established that Emjay's legal fees solely related to the theft by contractor and the lien settlement issues. The court also awarded Noble its legal fees. The testimony showed Noble's legal fees "related to the legal action associated with the theft by contractor situation and the lien issues that they needed to work through to resolve."

¶17 The court proceeded to sentencing and sentenced Wahlgren to prison.[5]

¶18 Wahlgren moved for postconviction relief. He argued the State failed to allege specific criminal intent in the charging documents and omitting this element deprived the court of subject matter jurisdiction. For this reason, Wahlgren also argued his guilty pleas were not knowing, intelligent, or voluntary. Alternatively, Wahlgren argued the circuit court should not have awarded restitution for the victims' legal fees because the fees were neither legally recoverable nor adequately proven. Wahlgren then argued he should be resentenced based on a reduced restitution award.

¶19 The court denied Wahlgren's postconviction motion. He appeals.

---

[5] The circuit court sentenced Wahlgren to two years' initial confinement and five years' extended supervision on two counts. On the third count, the court imposed a sentence of one-and-one-half years' initial confinement and one-and-one-half years' extended supervision but stayed it for five years' probation. All sentences were consecutive.

**DISCUSSION**

¶20    On appeal, Wahlgren renews his arguments from his postconviction motion.  He contends: (1) the charging documents were insufficient; (2) he is entitled to withdraw his guilty pleas; (3) the restitution award should be reduced; and (4) he is entitled to resentencing.  We address each argument in turn.

**I.    Sufficiency of the charging documents**

¶21    Wahlgren first argues the charging documents were insufficient to support the criminal-theft-by-contractor charges because the documents failed to allege an element of the crime—that Wahlgren acted with specific criminal intent. As such, Wahlgren asserts the court lacked subject matter jurisdiction and the case should be dismissed.

¶22    "The facts alleged in a complaint must be sufficient 'in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and that the defendant is probably culpable.'" *State v. Elverman*, 2015 WI App 91, ¶17, 366 Wis. 2d 169, 189, 873 N.W.2d 528 (citation omitted).  "When reviewing the sufficiency of a complaint, the facts alleged 'must be sufficient to establish probable cause.'" *Id.* (citation omitted).  "Such review, however, is not done in a 'hypertechnical sense, but in a minimally adequate way through a common sense evaluation' of whether a crime has been committed." *Id.* (citation omitted).

¶23    "[T]he basis of liability for criminal theft by contractor is a violation of the trust fund provisions of WIS. STAT. § 779.02(5), plus the criminal intent required by WIS. STAT. § 943.20(1)(b)." *Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 2002 WI 88, ¶24, 254 Wis. 2d 418, 646 N.W.2d 822.  WISCONSIN

STAT. § 779.02(5) is titled "Theft by contractors" and generally provides that funds paid by a property owner to a contractor for improvements to the property constitute a trust for the benefit of those having claims due and owing for labor or materials on the contract. Subsection (5) further provides that:

> The use of any such moneys by any prime contractor … for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor … of moneys so misappropriated and is punishable under [WIS. STAT. §] 943.20.

WIS. STAT. § 779.02(5). The subsection also instructs that if the contractor is a business that is its own legal entity "such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation." *Id.*

¶24 In a civil action, a showing of wrongful intent is not required to establish liability under § 779.02(5). *See **State v. Hess***, 99 Wis. 2d 22, 28, 298 N.W.2d 111 (Ct. App. 1980) ("The only difference between a civil and a criminal action for theft by contractor is that for a criminal conviction the state has an additional burden of proving that defendant acted with wrongful intent beyond a reasonable doubt."). However, in a criminal action, the criminal intent necessary to prove the crime of theft by contractor is established by WIS. STAT. § 943.20(1)(b).

¶25 WISCONSIN STAT. § 943.20(1)(b), in turn, makes it a crime for a trustee to intentionally use, transfer, conceal, or retain trust funds without the beneficiary's consent, contrary to the trustee's authority, and with intent to convert such funds to the trustee's own use or the use of another. The statute continues: "A refusal to deliver any money …, which is in his or her possession or custody

by virtue of his or her office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use[.]" ***Id.***

¶26    We conclude Wahlgren was properly charged with criminal theft by contractor, including the criminal intent element.  All counts in the amended complaint and amended information alleged that, during certain time periods (specified for each count), Wahlgren, pursuant to an agreement for the improvement of land, received money from an owner (specified for each count) and

> without consent of the owners and contrary to his authority; intentionally used any of the money for any purpose other than the payment of claims due or to become due from the defendant for labor and materials used in the improvements before all claims were paid in full contrary to sec. 943.20(1)(b) Wis. Stat. and contrary to sec. 779.02(5).

We have previously determined that "intentionally used a part of the money for a purpose other than the payment of claims due or to become due from him for labor or materials used in the improvements before all claims were paid in full" correctly states the intent element for the offense of theft by contractor.  *See **State v. Sobkowiak***, 173 Wis. 2d 327, 337-38, 496 N.W.2d 620 (Ct. App. 1992).

¶27    Moreover, the probable cause portion of the amended complaint contains allegations that would establish Wahlgren's criminal intent.  Wahlgren requested funds be made available to pay subcontractors, the funds were given to Wahlgren to pay various subcontractors, and Wahlgren repeatedly failed to do so, even after requesting funds for subsequent draws.  The amended complaint details how the contracts in place also required Wahlgren to make the payments to the subcontractors within fifteen days and he breached those agreements.  The owners

had to enter into civil agreements with some subcontractors to resolve the non-payments. The probable cause portion also offers specific examples—one subcontractor received a check, but was asked not to cash it, and when the subcontractor repeatedly asked if the check could be cashed, the subcontractor was advised Wahlgren did not have sufficient funds. Another subcontractor indicated Wahlgren only paid him half of what he was owed; however, when he tried to cash the check, it did not clear because of insufficient funds. Yet another subcontractor described calling several times looking for payment and when the company finally received a check and went to cash it, the subcontractor learned a "stop payment" order had been put on the check with no explanation. *See* WIS. STAT. § 943.20(1)(b) ("A refusal to deliver any money … upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use[.]").

¶28 Taken as a whole, the amended complaint and amended information establish all necessary elements, including criminal intent, for violations of WIS. STAT. §§ 779.02(5) and 943.20(1)(b). The facts and allegations are sufficient "in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and that the defendant is probably culpable." *Elverman*, 366 Wis. 2d 169, ¶17 (citation omitted).

¶29 Wahlgren, however, contends the charging documents are insufficient because they

> do not allege that Mr. Wahlgren intended to defraud or acted with a wrongful, fraudulent, or criminal purpose. They do not allege that Mr. Wahlgren intended to convert earmarked funds for his personal use or the use of another. Indeed, they allege nothing more than general intent.

In support, he relies on *Tri-Tech*, 254 Wis. 2d 418, and appears to argue that the supreme court in *Tri-Tech* changed the elements that were required to prove theft by contractor as well as the pattern jury instruction.

¶30     WISCONSIN JI—CRIMINAL 1443 (Feb. 2022)[6] is the pattern jury instruction criminal theft by contractor.  WIS JI—CRIMINAL 1443 at 4.   The instruction includes five elements,[7] but in the past it included a sixth element.  The sixth element required the State to prove that "the defendant used such money with intent to convert it to his own use."  *State v. Wolter*, 85 Wis. 2d 353, 369

---

[6] All references to WIS JI—CRIMINAL 1443 are to the February 2022 version unless otherwise stated.

[7] WISCONSIN JI—CRIMINAL 1443 outlines the elements of criminal theft by contractor as:

> 1.  The defendant entered into an oral or written agreement for the improvement of land.
>
>     ….
>
> 2.  The defendant received money from the owner under the agreement for the improvement of land.
>
>     ….
>
> 3.  The defendant intentionally used any of the money for a purpose other than the payment of claims due or to become due from the defendant for labor or materials used in the improvements before all claims were paid [in full] [proportionally in cases of deficiency].
>
> 4.  The use of the money was without the consent of the owner of the land and contrary to the defendant's authority.
>
> 5.  The defendant knew that the use of the money was without the consent of the owner of the land and contrary to the defendant's authority.

*Id.*

n.11, 270 N.W.2d 230 (Ct. App. 1978). However, in December 1991, the Criminal Jury Instructions Committee deleted this sixth element as redundant. *Sobkowiak*, 173 Wis. 2d at 337. The third element required the State to prove "the defendant intentionally used a part of the money for a purpose other than the payment of claims due or to become due from him for labor or materials used in the improvements before all claims were paid in full." *Id.* at 338; *see also* WIS JI—CRIMINAL 1443 at 2, 5 n.6. The committee explained that "using the trust fund money for any purpose other than paying off the lienholders [was] 'personal use' and thus the sixth element in the 1976 instruction was redundant." *Sobkowiak*, 173 Wis. 2d at 337; *see also* WIS JI—CRIMINAL 1443 at 6 n.8.

¶31 We considered this revised pattern jury instruction in *Sobkowiak*, 173 Wis. 2d at 337. There, the defendant argued that the circuit court erred when it refused to instruct the jury on the sixth element. *Id.* at 336-37. We rejected the defendant's argument and agreed with the committee that the sixth element was redundant and that the criminal intent was included in the third element. *Id.* at 337-38. We concluded "[t]he instruction thus correctly states the intent element for the offense of theft by contractor." *Id.* at 338. "The intent establishing the violation is the intent to use moneys subject to a trust for purposes inconsistent with the trust." *Id.* at 339.

¶32 After *Sobkowiak* was decided, the supreme court decided *Tri-Tech*, 254 Wis. 2d 418. *Tri-Tech* considered whether the treble damages remedy was available for civil theft by contractor and, if so, what proof was required. *Id.*, ¶1. The court determined that to receive treble damages in a civil case the plaintiff was required to prove the elements of criminal theft by contractor by a preponderance of the evidence. *Id.*, ¶24. The court then quoted the elements for criminal theft by contractor from a case that pre-dated *Sobkowiak* and therefore

14

included the additional sixth element that the ***Sobkowiak*** court held was redundant. *See **Tri-Tech***, 254 Wis. 2d 418, ¶26.

¶33 The ***Tri-Tech*** court, however, did not consider ***Sobkowiak*** or the pattern jury instruction. It did not determine whether the criminal intent element was fully included in the third element of the pattern instruction and therefore the sixth element was redundant. Rather, the ***Tri-Tech*** court's concern related, in part, to the circuit court's grant of summary judgment in favor of a plaintiff for treble damages when the plaintiff failed to make a showing that the defendant acted with criminal intent. ***Tri-Tech***, 254 Wis. 2d 418, ¶¶27, 31-33.

¶34 The ***Tri-Tech*** court observed that criminal theft by contractor "requires intent to defraud, but intent is almost always proven circumstantially, and 'may be inferred from a defendant's conduct.'" ***Id.***, ¶28 (citation omitted). To prove criminal intent, the plaintiff needed to show that "the defendant knowingly retained, concealed, or used contractor trust funds without the owner's consent, contrary to his authority, and with intent to convert such funds to his own use or the use of another." ***Id.***, ¶30. The court observed WIS. STAT. § 943.20(1)(b) "sets forth one acceptable method of proof: a defendant's refusal to pay a claim upon demand to one entitled to be paid out of trust funds is prima facie evidence of the defendant's intent to convert the trust funds to his own use." ***Id.***, ¶28.

¶35 Ultimately, the ***Tri-Tech*** court determined the plaintiff failed to meet its burden of proof for treble damages because it had not proven criminal intent. ***Id.***, ¶¶31-33. The court observed the fact that the defendant's "interrogatory answers admitted depositing the payment from The Frantz Group into a bank account encumbered by a security interest" was "insufficient *by itself* to establish a

15

prima facie case of specific criminal intent." ***Id.***, ¶32 (emphasis added) The court noted that the interrogatory answers "did not contain factual admissions sufficient to establish a prima facie case on criminal intent, even by way of the evidentiary method specifically approved in the statute, that is, proof of refusal to pay contractor funds on demand of one entitled to receive them." ***Id.*** Further, "[t]he interrogatories were silent as to demand and refusal to pay, and [the plaintiff] did not submit any affidavits or any other evidentiary material in support of its summary judgment motion." ***Id.***

¶36 In the present case, Wahlgren's argument appears to be that this sixth element, as stated in ***Tri-Tech***—that "the defendant used the money with the intent to convert it to his own use" is once more required and must appear within the charging documents. Because this language is absent from the charging documents, Wahlgren asserts the circuit court lacks subject matter jurisdiction.

¶37 We disagree. As stated previously, the ***Tri-Tech*** court did not consider ***Sobkowiak*** or the pattern jury instruction. Rather, the ***Tri-Tech*** court determined criminal intent was required to receive treble damages in a civil case and depositing money in an account was "insufficient *by itself* to establish a prima facie case of specific criminal intent." ***Tri-Tech***, 254 Wis. 2d 418, ¶¶1, 32 (emphasis added).

¶38 In any event, the charging documents do establish that Wahlgren "used the money with the intent to convert it to his own use." As stated previously, each count in the amended complaint and amended information alleges that Wahlgren, "without consent of the owners and contrary to his authority; *intentionally used any of the money for any purpose other than the payment of claims due* or to become due from the defendant for labor and materials used in

16

the improvements before all claims were paid in full." (Emphasis added). *See Sobkowiak*, 173 Wis. 2d at 337-38 (agreeing that intentionally using trust fund money for any purpose other than the payment of claims due is personal use).

¶39 Further, the probable cause section of the amended complaint makes repeated reference to the fact that Wahlgren was required to pay the subcontractors with money from the trust within fifteen days, failed to do so, and continued to request more. *See* WIS. STAT. § 943.20(1)(b). The amended complaint offers examples of specific contractors asking for payment from the trust and not being paid. *See id.* Owners were forced to settle some outstanding claims with subcontractors through civil negotiations. *See id.* We conclude these facts and allegations are sufficient "in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and that the defendant is probably culpable." *Elverman*, 366 Wis. 2d 169, ¶17 (citation omitted). The charging documents satisfied the specificity requirement, *see id.*, ¶18, and the circuit court had subject matter jurisdiction over the case.

¶40 Finally, Wahlgren argues that the charging documents also failed to include the allegation that Wahlgren "knew that the use of the money was without the consent of the owner of the land and contrary to the defendant's authority," which is the fifth element of WIS JI—CRIMINAL 1443. *See* WIS JI—CRIMINAL 1443 at 2. This argument was not developed in Wahlgren's brief-in-chief. In any event, given the discussion above, the charging documents were sufficient to satisfy the specificity requirement and put Wahlgren on notice that he was being accused of knowing that his use of the victims' money for purposes other than payment of their claims was without the victims' consent and contrary to his authority. *See Elverman*, 366 Wis. 2d 169, ¶¶17-18.

## II.  Plea Withdrawal

¶41    To withdraw a guilty plea after sentencing a defendant must establish by clear and convincing evidence "that withdrawal of the plea is necessary to correct a manifest injustice."  *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997).  "A plea which is not knowingly, voluntarily or intelligently entered is a manifest injustice."  *State v. Giebel*, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (Ct. App. 1995).

¶42    Wahlgren argued that his pleas were not knowing, voluntary, or intelligent because he was unaware of the specific criminal intent element of theft by contractor.  Similar to his argument in the preceding section, he contends the charging documents as well as the pattern jury instruction used during his plea colloquy did not contain the specific allegation or the material element that "the defendant used the money with the intent to convert it to his own use."  As such, he contends the plea colloquy was deficient (a *Bangert*[8] violation) and that his

---

[8]  *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).  "*Bangert* and its progeny govern the circuit court at plea colloquies."  *State v. Howell*, 2007 WI 75, ¶26, 301 Wis. 2d 350, 734 N.W.2d 48.  "A defendant may invoke *Bangert* only by alleging that the circuit court failed to fulfill its plea colloquy duties."  *Id.*, ¶27.  "A *Bangert* motion warrants an evidentiary hearing if (1) the motion makes 'a prima facie showing that [the] plea was accepted without the trial court's conformance with [WIS. STAT.] § 971.08 or other mandatory procedures,' … and if (2) the motion alleges that in fact the defendant did not know or understand the information that should have been provided at the plea colloquy."  *Id.* (citation omitted).

attorney's advice was deficient (a ***Nelson/Bentley***[9] violation) and he should be permitted to withdraw his pleas. *See **State v. Howell***, 2007 WI 75, ¶¶26, 74, 301 Wis. 2d 350, 734 N.W.2d 48.

¶43 However, as explained above, the criminal intent element was properly alleged in the charging documents and, at the plea hearing, Wahlgren reviewed and then admitted to these specific allegations. For each offense that he pled guilty, he advised the court, in part, that he intentionally used the trust fund money for a purpose other than paying the subcontractors.

¶44 As for the pattern jury instructions that were used during Wahlgren's plea hearing, during the plea colloquy, the parties and the court used a variation of the WIS JI—CRIMINAL 1443 Theft by Contractor pattern jury instruction. Specifically, they used WIS JI—CRIMINAL 1443A (Theft by Contractor: Defendant Is a Corporate Officer—§§ 779.02(5) and 943.20(1)(b)). This instruction was created in 2008 and is used when a general contractor is a company and a corporate officer is liable. *See* WIS JI—CRIMINAL 1443A at 3. Similar to WIS JI—CRIMINAL 1443, this pattern jury instruction also contains the required criminal intent element:

---

[9] ***Nelson v. State***, 54 Wis. 2d 489, 195 N.W.2d 629 (1972) and ***State v. Bentley***, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). "[A] defendant invokes ***Nelson/Bentley*** when the defendant alleges that some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm." ***Howell***, 301 Wis. 2d 350, ¶74. To entitle a defendant to an evidentiary hearing under ***Nelson/Bentley***, "a defendant first must allege sufficient, nonconclusory facts in his motion that, if true, would entitle him to relief." ***Howell***, 301 Wis. 2d 350, ¶76. "If the defendant meets the pleading requirements, the circuit court then must look to the record." ***Id.*** "If the record conclusively demonstrates that the defendant is not entitled to relief, then the circuit court in its discretion may grant or deny an evidentiary hearing." ***Id.***, ¶77.

….

4. The (name) corporation misappropriated money received from the owner.

   "Misappropriate" means *intentionally use any of the money for a purpose other than the payment of claims due or to become due from the corporation for labor or materials used in the improvements before all claims were paid [in full]* ….

5. The defendant was responsible for the misappropriation.

6. The misappropriation was without the consent of the owner of the land and contrary to the corporation's authority.

7. The defendant knew that the use of the money was without the consent of the owner of the land and contrary to the corporation's authority.

*See* WIS JI—CRIMINAL 1443A at 2 (emphasis added). The emphasized language is almost identical to the intent language approved in *Sobkowiak*. *See Sobkowiak*, 173 Wis. 2d at 337-39 (reviewing WIS JI—CRIMINAL 1443 and concluding the element that "The defendant intentionally used any of the money for a purpose other than the payment of claims due or to become due from the defendant for labor or materials used in the improvements before all claims were paid [in full]" properly stated the law on criminal intent).

¶45　Finally, and as stated previously, we do not interpret *Tri-Tech* to overrule *Sobkowiak* and change the pattern jury instructions to include an element that was previously held to be redundant. *Tri-Tech* stands for the proposition that treble damages are available for civil theft by contractor if the plaintiff proves the elements of criminal theft by contractor, including criminal intent. *Tri-Tech*, 254 Wis. 2d 418, ¶1. Criminal intent is shown by proof beyond a reasonable doubt that "The defendant *intentionally used* any of the money for a purpose other than

20

the payment of claims due or to become due from the defendant for labor or materials used in the improvements before all claims were paid [in full]." *Sobkowiak*, 173 Wis. 2d at 337-39 (emphasis added).  This is because "using the trust fund money for any purpose other than paying off the lienholders is 'personal use.'"  *Id.* at 337 (citation omitted); *see also id.* at 339 ("The intent establishing the violation is the intent to use moneys subject to a trust for purposes inconsistent with the trust.").

¶46    Because the specific criminal intent element of theft by contractor was properly discussed and admitted to at the plea hearing, Wahlgren is not entitled to withdraw his guilty pleas.  His pleas were knowing, voluntary, and intelligent.

## III.    Restitution award for legal fees

¶47    Next, Wahlgren argues the circuit court erred by awarding restitution to the victims for their legal fees.  He argues both that (1) the court was precluded from awarding restitution for legal fees in this case; and (2) the victims failed to adequately prove entitlement to the legal fees.

¶48    Legal fees are generally not recoverable and therefore normally not included in a restitution award.  *See* WIS. STAT. § 973.20(5)(a).  However, there is an exception when "the incurred attorney fees are the natural and proximate result of a wrongful act by the defendant which subjects the plaintiff to litigation with a party other than the defendant."  *State v. Anderson*, 215 Wis. 2d 673, 681, 573 N.W.2d 872 (Ct. App. 1997).  "It follows naturally that when a defendant defrauds people, reasonable attorney fees expended to recover their losses from parties who are civilly or criminally liable may be awarded as restitution."  *Id.* at 682.

¶49    Wahlgren argues legal fees could not be awarded as restitution "because there was no finding that Mr. Wahlgren *fraudulently* or *wrongfully* caused the victims to incur legal expenses[.]" We disagree. Wahlgren pled guilty to three counts of criminal theft by contractor and admitted to intentionally using the victims' money for a purpose other than the payment of claims due. *See* WIS. STAT. § 943.20(1)(b). The legal fees that the victims incurred as a result of litigation with third parties was because of Wahlgren's criminal conduct and may be included in the restitution award.

¶50    Wahlgren then argues the circuit court erred in awarding legal fees because the victims failed to meet their burden of proof. At a restitution hearing, the burden is on the victim to demonstrate the amount of loss, by a preponderance of the evidence. WIS. STAT. § 973.20(14)(a). Proof by a preponderance of the evidence means that the victim must show that it is "more likely than not" that the victim incurred the amount of restitution requested. *See State v. Rodriguez*, 2007 WI App 252, ¶18, 306 Wis. 2d 129, 743 N.W.2d 460.

¶51    The restitution hearing is not treated as a formal trial: "strict adherence to the rules of evidence and burden of proof" is not required. *State v. Johnson*, 2005 WI App 201, ¶14, 287 Wis. 2d 381, 704 N.W.2d 625. We review the restitution award for an erroneous exercise of discretion. *Id*., ¶10. Thus, we will uphold an award where the circuit court "logically interpreted the facts, applied the proper legal standard and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach." *Id.* In cases where the circuit court inadequately sets forth its reasoning, or fails to fully explain its ruling, we "independently review the record to determine whether it provides a basis for the [circuit] court's exercise of discretion." *State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).

22

¶52 Here, the court awarded $144,051.17 in legal fees and costs. Wahlgren complains the evidence presented at the restitution hearing was insufficient because the victims failed to produce meaningful itemized invoices, other documentation, or specific testimony supporting their claimed legal fees.

¶53 We disagree. In support of Lake Country Bible Church's claim for $32,631, L.A. testified that the church retained a law firm to address "the fact that work was not getting done" and to address "liens being filed against the building" and three or four "foreclosure judgments that were pending." L.A. testified that, although the itemized bills were not in the courtroom, all of the requested legal fees were fees that had been incurred since the church had to re-engage the law firm to deal with those problems.

¶54 We recognize that L.A. conceded the church also hired the law firm to get the village's approval for the project, and, because the itemized bills were not in the courtroom, L.A. could not say for sure whether that fee was included in the $32,631 amount. The circuit court awarded the full amount based in part on L.A.'s testimony that the legal fees requested were from the time period following the church's re-engagement with the law firm to handle the problems caused by Wahlgren's misappropriation. It is reasonable to infer from the record that the village approval for the project happened before construction commenced and before the church had to re-engage its law firm to handle the misappropriation. *See Pharr*, 115 Wis. 2d at 343. The court's award of legal fees did not amount to an erroneous exercise of discretion. *See Johnson*, 287 Wis. 2d 381, ¶10.

¶55 As for Lemberg, Lemberg sought $131,844 in restitution, which included $21,974 in legal fees.[10] In support, Lemberg attached a civil judgment, which stated that Lemberg was entitled to recover $131,844 from Wahlgren-Schwenn. A different circuit court had therefore already determined this amount was due and owing. The court's award of legal fees to Lemberg was supported by the record and did not amount to an erroneous exercise of discretion. *See id.*

¶56 Emjay sought $33,974 in legal fees. The testimony established the legal fees were incurred exclusively to address liens that were filed as a result of Wahlgren's failure to pay subcontractors. Similarly, Noble sought $55,472.17 in legal fees for work performed when it learned that subcontractors were not getting paid and began working with attorneys "to try to deal with the liens and get resolution." Noble also included invoices with redacted itemized descriptions for almost all of the legal fees. The court's award of legal fees to both Emjay and Noble was supported by the record and did not amount to an erroneous exercise of discretion. *See id.*

¶57 In short, the testimony and exhibits from the restitution hearing established the legal fees were incurred because the victims had to engage in litigation with third parties due to Wahlgren's criminal conduct. The restitution was properly awarded.

---

[10] Lemberg also sought recompense for $20,000 for internal hourly costs for its employee's time to try to obtain payment from Wahlgren. The circuit court found that to be an unreliable "looking-back estimate," and disallowed the $20,000.

## IV.    Resentencing

¶58    Finally, Wahlgren argues he is entitled to resentencing.  His argument is premised on this court reducing the restitution award by the amount awarded for legal fees.  Wahlgren argues the amount of restitution owed was a factor the court considered in fashioning its sentence and if this court reduces the restitution award, his sentence should be modified.  Because we did not reduce the restitution award, we need not consider this argument.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on narrowest possible ground).

*By the Court.*—Judgment and order affirmed.

This   opinion   will   not   be   published.    *See* WIS. STAT. RULE 809.23(1)(b)5.